# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CHRISTOPHER ALLEN PERRIEN,

Defendant-Appellant.

UNPUBLISHED
November 17, 2015

Nos. 312743 and 317405
Eaton Circuit Court
LC Nos. 11-020394-FH
        12-020053-FC

Before: GADOLA, P.J., and HOEKSTRA and M. J. KELLY, JJ.

PER CURIAM.

In Docket No. 312743, following a jury trial, defendant appeals as of right his convictions for first-degree home invasion, MCL 750.110a(2), and uttering and publishing, MCL 750.249, for which the trial court sentenced him, as a habitual offender, fourth offense, MCL 769.12, to serve concurrent terms of imprisonment, respectively, of 20 to 30 years and 9 to 30 years. In Docket No. 317405, following a jury trial, defendant appeals as of right his convictions for two counts of first-degree felony murder, MCL 750.316(1)(b), and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to serve terms of imprisonment of 2 years for each felony-firearm conviction, concurrent with each other but consecutive to concurrent terms of life without parole for each murder conviction. For the reasons explained in this opinion, we affirm.

Defendant's convictions in Docket No. 312743 relate to a home invasion at Jean Gzybowski's condo sometime between September 10 and September 19, 2010, while Gzybowski was on vacation. Defendant's convictions in Docket No. 317405 arise from the shooting deaths of Mike and Terri Greene at their home on September 22, 2011.

Important to both prosecutions was a police traffic stop on September 27, 2011 that led to the seizure of defendant's vehicle and subsequently a search of that vehicle incident to a warrant. During the search of defendant's red Pontiac Trans Am, police found items stolen from Gyzbowski's home, including a checkbook and key fob. Police also found a cell phone and other items taken from the Greenes's home. In addition, data obtained from a GPS in the car showed that defendant's car had been at the Greenes's home the day of the murder, and police found a rental receipt in the car which led them to a storage unit, where police found the gun used to kill the Greenes. Based on pawn shop records, police also determined that defendant had pawned property belonging to the Greenes and Gyzbowski. In addition, Gyzbowkski's banking

-1-

records, and Comcast records, showed a payment from Gyzbowski's account had been made on behalf of defendant toward his Comcast bill. Defendant was convicted as noted above, and he now appeals as of right in both cases.

## I. JUDICIAL BIAS

In both of these appeals, defendant alleges bias, or the appearance of impropriety, on the part of the judge who presided over the home-invasion trial, and who also heard and decided several pretrial motions in connection with the murder trial. Specifically, the trial judge in question approved defendant's request for work-release on an unrelated case, which resulted in defendant being out of jail and thus able to kill the Greenes. The trial court came under criticism for this decision following the Greenes's murder, particularly after it was discovered that defendant had no employment to justify work release. In connection with his murder trial, defendant asked the judge to recuse himself on the ground that the judge had come under severe criticism in the community for approving defendant's work-release. After a hearing on the motion, the trial judge denied the motion, then referred the matter to the chief judge of his circuit, who also denied the motion. On appeal, defendant contends that the trial court abused its discretion by denying defendant's motion because the trial court was actually biased or there existed at least the appearance of impropriety.

A trial judge's decision on whether to grant a motion for recusal is reviewed for an abuse of discretion. *People v Upshaw*, 172 Mich App 386, 389; 431 NW2d 520 (1988). "A trial court abuses its discretion when it fails to select a principled outcome from a range of reasonable and principled outcomes." *People v Kahley*, 277 Mich App 182, 184; 744 NW2d 194 (2008).

A criminal defendant is entitled to a neutral and detached magistrate. *People v Cheeks*, 216 Mich App 470, 480; 549 NW2d 584 (1996). Under MCR 2.003(C)(1)(a), disqualification of a judge is warranted if the judge is actually biased or prejudiced for or against a party or his attorney. "[A] trial judge is presumed to be impartial, and the party asserting partiality has the heavy burden of overcoming that presumption." *People v Wade*, 283 Mich App 462, 470; 771 NW2d 447 (2009). Absent actual bias or prejudice, under MCR 2.003(C)(1)(b), disqualification is appropriate where there is an appearance of impropriety contrary to Canon 2 of the Michigan Code of Judicial Conduct or a due process concern as enunciated in *Caperton v AT Massey Coal Co, Inc*, 556 US 868; 129 S Ct 2252; 173 LEd2d 1208 (2009). "The test for determining whether there is an appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired." *People v Aceval*, 486 Mich 887, 889; 781 NW2d 779 (2010) (citation and quotation marks omitted). In terms of due process, a judge should be disqualified only in those extreme situations in which, objectively viewed, "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Caperton*, 557 US at 877.

In this case, regarding defendant's assertions of actual bias, defendant has not overcome the presumption that the trial court was impartial. Defendant claims that the trial court's involvement with defendant's work-release demonstrates actual bias, but the trial court expressly disavowed any such prejudice against defendant and stated on the record that he did not "feel any particular pressure to make any rulings one way or the other." The trial court assured both

parties that they would get a "fair" trial. Given this express statement by the trial court and the presumption that a judge is impartial, we see no reason to suppose that the trial court was actually biased or prejudiced. MCR 2.003(C)(1)(a). Defendant also argues that the trial court's rulings with respect to defendant's pretrial motions and defendant's sentence of 20 years in the home invasion case demonstrate actual bias by the trial court. We fail to see how a sentence within the recommended minimum guideline range constitutes proof of actual bias and, more generally, judicial rulings on their own, even those unfavorable to a litigant, are not sufficient to demonstrate bias. See *People v Jackson*, 292 Mich App 583, 598; 808 NW2d 541 (2011); *In re Contempt of Henry*, 282 Mich App 656, 680; 765 NW2d 44 (2009). In short, defendant has not shown actual bias.

Insofar as defendant claims that the trial court's involvement with his being granted work release violated his due process rights or demonstrated an appearance of impropriety, we likewise see no abuse of discretion in the trial court's denial of defendant's motion for disqualification. Although it appears that the trial court came under scrutiny for its decision to approve defendant's work release, this type of criticism of a judge's decision-making is not unusual and it does not evince the trial court's inability to act as a neutral decisionmaker. That is, as the chief judge aptly noted when denying defendant's motion for disqualification, "it's not uncommon for people to criticize judges." The existence of such criticism does not, on its own, create a perception that a judge is unable to carry out judicial responsibilities with integrity, impartiality, and competence. See *Aceval*, 486 Mich at 889. Further, this is also not the type of "extreme" case where the probability of actual bias on the part of the judge is too high to be constitutionally tolerable. See *Caperton*, 557 US at 877. On the whole, defendant has failed to show that either of his trials was tainted by judicial bias or any appearance of impropriety. Thus, the trial court did not abuse its discretion by denying defendant's motion for disqualification.

## II. DEFENDANT'S MOTION TO SUPPRESS

In both of these appeals, defendant argues on appeal that the trial court erred in denying his motions to suppress the evidence obtained in connection with the traffic stop and search of his vehicle. Specifically, defendant maintains that he was arrested when the police stopped his vehicle and placed him in handcuffs, and that the police lacked the probable cause necessary for such a seizure. Alternatively, defendant contends that, if the initial stop is construed as an investigatory stop, the police lacked reasonable suspicion for effecting the stop and the prolonged detention of defendant transformed the investigatory stop into an arrest that was unreasonable under the circumstances. Ultimately, defendant claims that the police violated defendant's Fourth Amendment right to be free from unreasonable searches and seizures, and that any evidence discovered as a result of these constitutional violations should have been suppressed as fruit of the poisonous tree.

This Court reviews "de novo a trial court's ultimate decision on a motion to suppress," but "the trial court's underlying findings of fact are reviewed for clear error." *People v Beuschlein*, 245 Mich App 744, 748; 630 NW2d 921 (2001). "We review de novo whether the Fourth Amendment was violated and whether an exclusionary rule applies." *People v Hyde*, 285 Mich App 428, 436; 775 NW2d 833 (2009).

"US Const, Am IV and Const 1963, art 1, § 11 guarantee the right of the people to be free from unreasonable searches and seizures." *People v Brown*, 279 Mich App 116, 130; 755 NW2d 664 (2008). The touchstone of any Fourth Amendment analysis is reasonableness, which must be measured by examining the totality of the circumstances. *People v Williams*, 472 Mich 308, 314; 696 NW2d 636 (2005). "Because of endless variations in the facts and circumstances implicating the Fourth Amendment, reasonableness is a fact-intensive inquiry that does not lend itself to resolution through the application of bright-line rules." *Id.* (citation and quotation marks omitted).

"Generally, searches or seizures conducted without a warrant are presumptively unreasonable and, therefore, unconstitutional." *People v Barbarich*, 291 Mich App 468, 472; 807 NW2d 56 (2011). Evidence seized in violation of the Fourth Amendment must generally be excluded from trial. *People v Chowdhury*, 285 Mich App 509, 516; 775 NW2d 845 (2009). However, there are several exceptions to the warrant requirement, including the investigative stop, also known as a *Terry*[1] stop, which allows an officer to briefly stop a person, or vehicle, for further investigation "if a police officer has a reasonable, articulable suspicion to believe a person has committed or is committing a crime given the totality of the circumstances." *Barbarich*, 291 Mich App at 473; *People v Steele*, 292 Mich App 308, 314; 806 NW2d 753 (2011). "Under *Terry*, the reasonableness of a search or seizure depends on whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Williams*, 472 Mich at 314 (citation and quotation omitted). "A determination regarding whether a reasonable suspicion exists must be based on commonsense judgments and inferences about human behavior." *People v Jenkins*, 472 Mich 26, 32; 691 NW2d 759 (2005) (citation omitted).

In comparison to a *Terry* stop, a warrantless arrest requires "probable cause to believe that an offense has occurred and that the defendant has committed it." *People v Cohen*, 294 Mich App 70, 75; 816 NW2d 474 (2011) (quotation omitted). "Probable cause to arrest exists where the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Id.* (quotation omitted). The probable cause standard "is a practical, nontechnical conception" judged from the totality of the circumstances before the arresting officers at the time of arrest. *Id.* (quotation omitted). "Circumstantial evidence, coupled with those inferences arising therefrom, is sufficient to establish probable cause." *People v Nguyen*, 305 Mich App 740, 752; 854 NW2d 223 (2014).

Turning to the present facts, at issue in this case is whether the police had reasonable suspicion to stop and detain defendant while he was driving, and, if so, whether the police, within the scope of that *Terry* stop, discovered probable cause to arrest defendant and seize his car.

According to the record below, items were stolen from the Greenes's home at the time of their murder, including a cell phone and credit cards. On September 26, 2011, the police learned

---

[1] *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

that one of their cards had been used to purchase gasoline at an Admiral station and that a card had also been used to obtain cash from an ATM. Images from the gas station where the victim's credit card was used to purchase gasoline showed a red Firebird Trans Am at the station near the time the purchase was made. Surveillance imagery of the ATM transaction showed a white male, driving a red Firebird Trans Am and wearing dark sweatpants with a stripe down the side, at the time of the transaction. Police also attempted to track the use of a cell phone missing from the Greene's home. On September 27, the cell phones "pinged" in Lansing, and a detective in the area observed a red Trans Am with temporary registration plates. The detective photographed the vehicle and noted that the driver had a large, distinctive tattoo on his neck. Later that same day, the cell phone pinged again in a different area of Lansing, near Lake Lansing Road. One of the officers who saw the Trans Am earlier responded to the Lake Lansing Road area and saw defendant, whom he identified as the same white man from earlier with the large, distinctive tattoo on his neck. At that time, defendant was wearing sweatpants with a white stripe and standing next to a red Pontiac Firebird Trans Am in an Applebee's parking lot. Defendant then entered his car and drove away, at which time, the police made the decision to stop defendant. Given this evidence, it is clear that, at a minimum, police had a reasonable, articulable suspicion to believe that defendant was in possession of stolen items and involved with the murders. *Barbarich*, 291 Mich App at 473. Thus, their investigatory stop of defendant was clearly supported by reasonable suspicion that defendant was connected to the murder of the Greenes.

After stopping defendant, police handcuffed defendant and placed him in the back of a police car. They then ran defendant's name through LEIN, at which time they learned that defendant was on work release from Eaton County and driving on a suspended license. The trial court specifically made the factual determination that "defendant was handcuffed and placed in the back of a patrol car *for less than six minutes* before his identity and his work release status were ascertained, as well as the fact that he . . . had been driving on a suspended license." Given the evidence presented, we see nothing clearly erroneous in the trial court's factual findings in this regard. Further, given the seriousness of the offense involved, which included the use of a dangerous weapon, we do not think that the police acted unreasonably by drawing their guns or by securing defendant in handcuffs for the less than six minutes it took to run defendant's name through LEIN. "[T]he officers had reason to be concerned for their safety and thus could take reasonable steps to protect themselves." *United States v Perdue*, 8 F3d 1455, 1463 (CA 10, 1993). See also *Brown v Lewis*, 779 F3d 401, 415 (CA 6 2015); *People v Nimeth*, 236 Mich App 616, 624; 601 NW2d 393 (1999). In other words, given the circumstances of this case, the fact that defendant was handcuffed does not transform a proper investigatory stop into an arrest for which probable cause was required. *People v Green*, 260 Mich App 392, 397; 677 NW2d 363 (2004), overruled on other grounds *People v Anstey*, 476 Mich 436; 719 NW2d 579 (2006).

Once it became apparent that defendant was in violation of his work release and driving on a suspended license, the police had probable cause for defendant's continued detention. For example, MCL 764.15(1)(a) authorizes a warrantless arrest where "[a] felony, misdemeanor, or ordinance violation is committed in the peace officer's presence," and under MCL 257.904(1) and (3) driving on a suspended license is a misdemeanor. Moreover, MCL 764.15(1)(g) authorizes a police officer to arrest a person without a warrant where the officer "has reasonable cause to believe the person . . . has violated 1 or more conditions of a conditional release order or probation order . . . ." As one police officer explained at the suppression hearing, it was apparent

-5-

that defendant was in violation of his work release order because he had been seen twice that day simply "driving around" and not "working." Consequently, there was probable cause for defendant's arrest and his transfer to the custody of Eaton County.

Once defendant was arrested, his vehicle was towed to the police station. See generally *People v Toohey*, 438 Mich 265, 275; 475 NW2d 16 (1991) (discussing impoundment of vehicles incident to lawful arrests). As discussed in more detail *infra*, the police then obtained a warrant for the search of defendant's vehicle, a storage unit, and the GPS device found in the car.[2] In these circumstances, nothing about the stop of defendant's vehicle or his subsequent arrest was unreasonable, and it in no way affected the validity of the police's search of defendant's vehicle. Thus, the trial court did not abuse its discretion by denying defendant's motion to suppress on the basis of the investigatory stop and subsequent arrest.

### III. LATE ENDORSEMENT

Defendant's last issue in Docket No. 312743 is a challenge to the trial court's decision to allow the prosecution to call a witness who was not brought to the court's attention until the first day of trial. Specifically, defendant argues that the trial court abused its discretion by allowing the prosecutor to call Andrea Cisneros, defendant's former girlfriend who testified that, around the time of Gzybowski's robbery, defendant brought a steam cleaner and bottle of liquor to her home. These items were among those stolen from Gzybowski's home. Defendant claims that the prosecutor's late endorsement of Cisneros violated MCL 767.40a, that the prosecutor did not have good cause for adding a late witness, and that the late addition of Cisneros's testimony prejudiced defendant because he was unable to prepare for this testimony.

"The trial court's decision to permit the prosecutor to add or delete witnesses to be called at trial is reviewed for an abuse of discretion." *People v Callon*, 256 Mich App 312, 325-326; 662 NW2d 501 (2003). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008).

MCL 767.40a sets forth a prosecutor's duty to disclose witnesses. Generally, the prosecuting attorney must inform a defendant of "all witnesses known to the prosecuting attorney who might be called at trial and all res gestae witnesses known to the prosecuting attorney or investigating law enforcement officers." MCL 767.40a(1). Subsection (3) requires the prosecutor to provide the defense with a list of witnesses the prosecution intends to call "[n]ot less than 30 days before the trial," but subsection (4) adds that the prosecution "may add

---

[2] We note briefly that in Docket No. 312743, defendant offers the patently unsubstantiated claim that the police used the GPS to improperly monitor defendant in contravention of *United States v Jones*, __ US __; 132 S Ct 945, 949; 181 L Ed 2d 911 (2012), wherein the Court held that the warrantless attachment of a GPS to an individual's vehicle constituted a search and seizure. *Jones* is wholly inapposite on the present facts for the simple reason that the police found the GPS in defendant's car; it was not placed there by police.

or delete from the list of witnesses he or she intends to call at trial at any time upon leave of the court and for good cause shown or by stipulation of the parties." Belated discovery of a witness may constitute good cause. See *People v Burwick*, 450 Mich 281, 289; 537 NW2d 813 (1995); *People v Canter*, 197 Mich App 550, 563; 496 NW2d 336 (1992). Further, to establish that the trial court abused its discretion by allowing the late endorsement of a witness, a defendant must demonstrate that he was prejudiced by the trial court's ruling. *Callon*, 256 Mich App at 328.

In this case, Cisneros was not included on the prosecution's witness list before trial. However, the prosecutor explained on the record that the prosecution first spoke with Cisneros shortly before trial because defendant indicated that she was going to be an alibi witness at trial. Based on this representation from defendant, the prosecutor spoke with Cisneros and made the decision to seek her endorsement as a witness at trial. To afford defendant an opportunity to prepare for this testimony, the trial court indicated that defense counsel should be given "an opportunity to talk to her," and the prosecutor agreed not to call Cisneros until the following day and to make sure that defendant had the necessary contact information for the witness.

Based on this record, we conclude that the trial court did not abuse its discretion by allowing the late endorsement of a witness when it is clear that the prosecutor only learned of her potential testimony shortly before trial. This late discovery constituted good cause. See *Burwick*, 450 Mich at 289; *Canter*, 197 Mich App at 563. Further, we see no indication that defendant was prejudiced by the trial court's ruling. See *Callon*, 256 Mich App at 328. Defendant knew of Cisneros's identity before trial and her testimony was delayed in order to give defendant an opportunity to speak with her and prepare for her testimony. Defendant did not move for a continuance as a result of this proposed testimony, and we can discern no prejudice from the admission of her testimony. Cf. *id*. at 326. Because the prosecutor had good cause for the late endorsement and defendant was not prejudiced, the trial court did not abuse its discretion by allowing the prosecutor to add Cisneros as a witness.

## IV. *FRANKS* HEARING

In Docket 317405,[3] defendant challenges several warrants obtained by the police for the search of defendant's car, the storage unit belonging to defendant's girlfriend, Crystal Gonzalez, Gonzalez's apartment, and to obtain the data from the GPS found in defendant's car. Specifically, defendant argues that the trial court abused its discretion by declining to conduct an evidentiary hearing in connection with his pretrial motions to suppress evidence predicated on allegations that certain statements in the affidavits in support of certain search warrants were either deliberately false or made in reckless disregard for the truth. Defendant argues that, if these falsehoods and material omissions are struck from the supporting affidavits, the warrants were not supported by probable cause and that, therefore, defendant was entitled to suppression of the evidence obtained in these searches.

---

[3] This and all remaining issues relate solely to defendant's appeal from his murder and felony-firearm convictions.

This Court reviews for an abuse of discretion a trial court's decision whether or not to hold an evidentiary hearing based on a challenge to the validity of the search warrant's affidavit. *People v Martin*, 271 Mich App 280, 309; 721 NW2d 815 (2006). "However, this Court reviews the facts supporting the denial of the evidentiary hearing for clear error and reviews the application of those facts to the law de novo." *Id.* With respect to probable cause, "[a] magistrate's determination of probable cause should be paid great deference by reviewing courts." *People v Keller*, 479 Mich 467, 474; 739 NW2d 505 (2007) (quotation omitted). The reviewing court considers "only whether a reasonably cautious person could have concluded that there was a 'substantial basis' for the finding of probable cause." *People v Russo*, 439 Mich 584, 603; 487 NW2d 698 (1992).

"A search warrant may be issued only on a showing of probable cause that is supported by oath or affirmation." *People v Nunez*, 242 Mich App 610, 612; 619 NW2d 550 (2000), citing US Const, Am IV; Const 1963 art 1, § 11; MCL 780.651(1). "Probable cause to issue a search warrant exists where there is a 'substantial basis' for inferring a 'fair probability' that contraband or evidence of a crime will be found in a particular place." *People v Kazmierczak*, 461 Mich 411, 417-418; 605 NW2d 667 (2000) (citation omitted). "The magistrate's findings of reasonable or probable cause shall be based on all the facts related within the affidavit made before him or her." *People v Ulman*, 244 Mich App 500, 509; 625 NW2d 429 (2001) (quotation omitted).

There is a presumption that the affidavit supporting the search warrant is valid. *Martin*, 271 Mich App at 311. A defendant may seek a hearing to challenge the validity of the affidavit supporting the search warrant, but to merit a hearing, the challenge "must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Id.* (citation omitted). To necessitate a hearing, the defendant must make a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [that] the allegedly false statement is necessary to the finding of probable cause." *Id.*, quoting *Franks v Delaware*, 438 US 154; 98 S Ct 2674; 57 L Ed 2d 667 (1978). "Allegations of negligence or innocent mistake are insufficient." *Franks*, 438 US at 171. "This standard also applies to material omissions from affidavits." *Ulman*, 244 Mich App at 510. Finally, any invalid portions of the affidavit may be severed, *id.*; and "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Franks*, 438 US at 171-172.

Defendant identifies several items that he claims constitute material omissions from the affidavits. Specifically, defendant asserts that the affidavit did not state (1) that there was a "ping" on the victim's cell phone in Grand Rapids on September 26, 2011, at which time no red Trans Am was spotted, (2) that the victims' card was also used at a Speedway station and police could not determine that a red Trans Am had been at the Speedway station, (3) that the first "ping" on September 27, 2011 was recorded at 3:22 p.m., but police did not see defendant's vehicle until 4:09 p.m., (4) that this first ping occurred in a highly populated area, (5) that police did not stop the red Trans Am after the first ping because they did not believe they had reasonable suspicion for a stop, (6) that a second red Trans Am was observed in the area near the first ping, (7) that the second "ping" on September 27, 2011 occurred at 5:38 p.m. and police did not spot defendant's vehicle until 6:13 p.m., (8) that the second ping occurred in a highly

populated area, (9) details regarding the size of the geographical area encompassed by the "pings," and (10) that when police saw defendant after the second ping he was talking on a cell phone, but police did not detect an additional "ping" at that time.

Considering defendant's claimed omissions, even supposing that there was some deliberate or reckless omission of this information in the affidavit, we conclude that, even if this evidence was inserted into the affidavit, probable cause remains and thus the trial court did not abuse its discretion by denying defendant's motion for a *Franks* hearing or to suppress the evidence. See *Ulman*, 244 Mich App at 513. That is, the germane facts were that police had ample reason, based on the Admiral gas station and ATM images, to believe that they were looking for a white male driving a red Trans Am. On two separate occasions defendant, a white male who fit the description of the suspect, was seen driving such a car within the proximity of an area where the victim's cell phone "pinged" shortly before.

Given this information, the gap between the pings and when police saw the red Trans Am in question, while relevant, does not undermine the magistrate's finding of probable cause. Further, the fact that police saw a second red Trans Am—driven by an African-American woman with children, who did not fit the description of the suspect—in the area of the first ping on September 27 does not negate the existence of probable cause. Likewise, the police's decision not to stop defendant after the first ping is of little importance when it was the fact that defendant was seen with a red Trans Am in *both* locations that gives rise to a finding of probable cause. The failure to locate the vehicle in Grand Rapids the day before, or to find footage of a red Trans Am on the Speedway video footage, does not invalidate the police's investigation on September 27 or undermine the significance of defendant's presence at both ping locations on that date. We also see nothing misleading or significant in the fact that defendant was on a cell phone when observed by police near Lake Lansing Road. The affidavit in no way suggested that there was a third ping that could be linked to this conversation, and it is obviously quite possible that there was no third ping because defendant was using a different cell phone. Finally, the fact that the pings occurred in populated areas, or that the affidavits did not identify the precise perimeter of the area implicated by the "pings," does not obviate the significance of the fact that defendant was found in both locations where the cell phone pinged, that he matched the description of the person who used the Greenes's card at the ATM, and that he was driving a red Trans Am like the one seen at the ATM and the gas station. Thus, even if these omissions are considered, probable cause remains and there was no need for a *Franks* hearing. See *Franks*, 438 US at 171-172; *Ulman*, 244 Mich App at 513.

Aside from these purported omissions, with respect to the search warrant for the storage facility, defendant identifies what he claims to be two falsehoods. First, the affidavit states that Gonzalez saw defendant place a gun in her storage unit, when in fact she told police that she saw defendant arrive at the unit with items to store and that defendant had a gun in his possession. Second, the affidavit indicates that an employee of the facility stated that defendant accessed the unit on September 22, 2011, after paying the bill for the unit, when in fact, although defendant paid the bill and the records show that someone accessed the unit on that date, the employee testified at the preliminary examination that she did not actually see defendant enter the unit.

When denying defendant's motion for a *Franks* hearing, the trial court noted the apparent contradictions between the affidavit and the statements made by Gonzalez as well as the storage

unit employee. The trial court then properly considered the unchallenged portions of the affidavit and concluded that probable cause nonetheless remained. See *Franks*, 438 US at 171-172. The court explained:

> Without the [challenged] information, the affidavit still included the fact that after a warrant was executed on Defendant's red Pontiac Firebird, officers found a receipt from Allsafe Storage for Unit 62, dated September 22, 2011. Upon interviewing . . . an employee of Allsafe Storage, the officers confirmed that on September 22, 2011, the Defendant came into Allsafe Storage offices and paid on Unit 62 . . . . Also on September 22, 2011, [Gonzalez, the renter of the unit] herself called [the employee] at the Allsafe Storage offices in regards to the Defendant's presence at Allsafe. Finally, the affidavit still included the fact that [Gonzalez] was at the storage unit on September 22, 2011 and saw the Defendant place items into the storage unit.
>
> Under the totality of the circumstance[s], there is a substantial basis for the magistrate to have determined probable cause existed. . . . The magistrate had information that connected the Defendant to Allsafe Storage on the day of the alleged murders, and there is information that on this day he was seen placing items into Unit 62. Viewing these facts, along with the information provided by the previous warrants incorporated by reference, there was probable cause to believe that a search of Unit 62 would reveal evidence related to the alleged double homicide committed on September 22, 2011.

The trial court thus concluded that even if defendant's challenges to the affidavit are credited, and the challenged factual assertions removed from it, what remains still sets forth probable cause. The trial court's reasoning was sound and, even assuming some recklessness or deliberate falsity, defendant has not shown that the trial court abused its discretion by denying defendant's motion for a *Franks* hearing. See *Martin*, 271 Mich App at 309.

In addition to his claims of omissions and falsehoods, defendant specifically argues that the trial court erred by failing to suppress the data police obtained from the GPS pursuant to a warrant to search the GPS. Defendant concedes that the police had a lawful basis to seize the GPS based on the warrant to search the car, but defendant argues that the police lacked probable cause to obtain a warrant for the GPS data. Contrary to this argument, less than a week after the murders, the GPS was found in a vehicle containing items stolen from the Greenes's home, defendant was the owner of the vehicle, and there was reason to believe he was using the victim's cell phone. On this record, there was reason to believe that the vehicle was connected to the crimes, and there was probable cause to obtain a warrant to gain information from the GPS about the vehicle's whereabouts on the day of the murders.

For all these reasons, we reject defendant's probable cause arguments and his challenges to the validity of the affidavits underlying the search warrants.

## V. DAUBERT HEARING

-10-

Defendant challenges the trial court's decision not to hold a *Daubert*[4] hearing to explore the scientific validity of the methodology according to which signals from a murder victim's cell phone were traced to defendant's location. At trial, two police officers, one of whom was qualified as an expert, testified regarding the police's efforts to trace the victim's cell phone and the "pings" they obtained when one of the phones was in use, which ultimately led them to defendant. On appeal, defendant now argues that this evidence should not have been admitted and that the trial court abused its discretion by not holding a *Daubert* hearing.

This Court reviews for an abuse of discretion a trial court's decision to conduct a *Daubert* hearing. *Lenawee Co v Wagley*, 301 Mich App 134, 162; 836 NW2d 193 (2013); *People v Unger*, 278 Mich App 210, 218; 749 NW2d 272 (2008). Likewise, we review for an abuse of discretion a trial court's decision to qualify a witness as an expert and to admit a witness's testimony. *Lenawee Co*, 301 Mich App at 161.

MRE 702 and MRE 703 govern scientific evidence and expert witnesses, as follows:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. [MRE 702.]

> The facts or data in the particular case upon which an expert bases an opinion or inference shall be in evidence. This rule does not restrict the discretion of the court to receive expert opinion testimony subject to the condition that the factual bases of the opinion be admitted in evidence thereafter. [MRE 703.]

Under these rules, "[a] court considering whether to admit expert testimony under MRE 702 acts as a gatekeeper and has a fundamental duty to ensure that the proffered expert testimony is both relevant and reliable." *People v Kowalski*, 492 Mich 106, 120; 821 NW2d 14 (2012). See also *Gilbert v Daimler-Chrysler Corp*, 470 Mich 749, 781; 685 NW2d 391 (2004); MRE 104(a).

In this case, the trial court performed its gatekeeper function, concluding that a hearing was unnecessary because "the technology of the cell phone . . . met the *Daubert* standard." The trial court also noted in its oral ruling that it had reviewed the materials submitted by the prosecution, including case law and various articles, and that, based on these submissions, the court was persuaded that the evidence was "sufficiently reliable." We discern no abuse of discretion in the trial court's exercise of its gatekeeping function under MCR 702.

---

[4] *Daubert v Merrell Dow Pharmaceuticals*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993).

Moreover, although the trial court did not hold a hearing, from the evidence introduced at trial, it is clear that the evidence in question was properly admitted and thus any failure by the trial court to hold a *Daubert* hearing was harmless. At trial, the two police witnesses described their respective specialties in electronic surveillance and digital forensic investigations relating to hand-held devices and computers, each providing extensive information concerning their training and experience, and the methodology they employed in this case. Defendant did not renew his objection to the admission of this evidence at trial,[5] and it seems plain that this evidence was admissible under MRE 702. Moreover, we note that the trial court granted a motion to provide funds for, and appoint, an expert on GPS and cell phone technology to assist the defense. The defense thus had adequate opportunity to challenge the techniques used in this case. And, ultimately, police found the victim's cell phone in defendant's car, largely overshadowing the significance of the cell phone tracking evidence at trial. Overall, we find no reason to conclude that the trial court abused its discretion and defendant is not entitled to relief.

We note that, on appeal, to support the proposition that cell phone tracking evidence of the kind at issue in this case is unreliable and potentially misleading, defendant cites two recent articles from legal periodicals. However, those articles were not part of the record of the proceedings below, and there has been no motion to enlarge the record. Accordingly, we decline to consult those writings for purposes of deciding this issue. See MCR 7.210(A); *People v Eccles*, 260 Mich App 379, 384 n 4; 677 NW2d 76 (2004). On the whole, we conclude that the trial court did not abuse its discretion in declining to hold a *Daubert* hearing, and that no error resulted in connection with the testimonies of the two challenged witnesses.

## VI. FIREARMS IDENTIFICATION

Next, defendant challenges the admission of expert testimony on firearm and toolmark identification, claiming that such evidence is generally unreliable. Specifically, defendant challenges the methodology through which a handgun found in the storage unit was identified as among the items stolen in the home invasion underlying Docket No. 312743, and also as the murder weapon in connection with the homicides underlying Docket No. 317405. However, defendant admits that no such objection was raised below, and so this issue comes to this Court unpreserved. Our review is thus limited to ascertaining if there was a plain error that affected defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Where plain error is shown, the reviewing court should reverse only when the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Id.*

To establish that the type of firearm and toolmark evidence at issue in this case is unreliable, defendant cites to a recent concurrence authored by Justice McCormack in which she noted her "unease" with expert testimony on toolmark evidence based on recent criticisms in the scientific community regarding the reliability and scientific foundation of such evidence. *People*

---

[5] The defense declined to cross-examine the witness who was recognized as an expert, but vigorously cross-examined the other witness over the technology upon which he relied.

*v McAdoo*, 497 Mich 975; 859 NW2d 711 (2015) (MCCORMACK, J., concurring). Justice McCormack's concurrence quoted from a report from the National Research Council of the National Academies, entitled *Strengthening Forensic Science in the United States: A Path Forward* (Washington, DC: National Academies Press, 2009). On appeal, defendant now relies heavily on this report and Justice McCormack's concurrence to establish that the evidence in this case was unreliable.

However, a concurring opinion is not binding precedent, *People v Sexton*, 458 Mich 43, 65; 580 NW2d 404 (1998), and thus Justice McCormack's opinion does not establish that toolmark or firearm evidence is considered categorically unreliable in Michigan. Moreover, because the report relied on by defendant was not part of the lower court record, defendant cannot now expand the record on appeal to include these materials. See MCR 7.210(A); *Eccles*, 260 Mich App at 384 n 4. Consequently, on the record presented, we cannot conclude that the trial court plainly erred by failing to sua sponte exclude firearm and toolmark evidence.

Moreover, as in *McAdoo*, 497 Mich at 975, the present issue is unpreserved and defendant has not shown that he was entitled to relief "given the other evidence of guilt." That is, it was not merely defendant's possession of the murder weapon that established his guilt. Defendant was in possession of items stolen from the Greenes's house and the GPS in his car placed him at the Greenes's home on the day of the murders. Given this other evidence, defendant has not shown that the admission of the firearm and toolmark evidence affected his substantial rights. Consequently, defendant has not shown plain error and he is not entitled to relief on appeal.

## VII. CUMULATIVE ERROR

Finally, defendant suggests that if no single claim of error itself warrants reversal, such relief is nonetheless required in the face of the cumulative effect of all such errors. However, because defendant has failed to establish any errors, there can be no cumulative effect of errors meriting reversal. See *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007).

Affirmed.

/s/ Michael F. Gadola
/s/ Joel P. Hoekstra
/s/ Michael J. Kelly