*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 21, 2021

Plaintiff-Appellee,

v

No. 349774
Kent Circuit Court
LC Nos. 18-007500-FH; 18-
007727-FH

MARCUS LAVELL LEWIS,

Defendant-Appellant.

Before: REDFORD, P.J., and MARKEY and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of delivery of a controlled substance less than 50 grams, MCL 333.7401(2)(a)(*iv*), and two counts of possession with intent to deliver a controlled substance less than 50 grams, MCL 333.7401(2)(a)(*iv*). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, and as a subsequent drug offender, MCL 333.7413(2), to concurrent sentences of 10 to 60 years' imprisonment for each count. The sentences reflected an upward departure from the minimum sentence guideline ranges. The trial court also ordered defendant to pay $1,000 in court costs. We affirm.

In this case, Shawn Osborn phoned defendant to purchase some cocaine. Defendant agreed to meet Osborn at a party store. Osborn's "associate," Brandon Jones, drove Osborn to the party store. Shortly after they arrived at the store, defendant pulled up to the store in his vehicle. Osborn entered defendant's SUV and purchased a rock of cocaine from defendant for $20. Two detectives with the Grand Rapids Police Department, Steven Stoddard and Ross VandenBerg, were surveilling the party store and witnessed an exchange between the two men that resembled a drug transaction.[1] Osborn proceeded to exit defendant's vehicle, return to Jones's car, and then leave the party store in Jones's vehicle. Detective VandenBerg testified that Osborn had a "cupped" hand when he climbed out of defendant's SUV. Defendant also left the party store's parking lot in his SUV after the exchange. Defendant's vehicle was then stopped by police, and both

---

[1] The officers acknowledged that they did not actually see drugs being passed from defendant to Osborn.

defendant and his SUV were searched. No drugs were found on defendant or in his vehicle. He was arrested and taken to jail. Jones and Osborn were stopped by police in a Meijer parking lot. Both men confessed that Osborn had just purchased drugs from defendant, and cocaine and heroin were found in Jones's vehicle. The detectives went through Osborn's cell phone and noticed that Osborn had placed a call to a person identified as "Mel" a few hours before the drug exchange in the parking lot had occurred. "Mel" was an alias used by defendant. The next day Detective VandenBerg swore out an affidavit as part of a request for a search warrant covering defendant's apartment, and a magistrate issued a warrant authorizing a search of the home. In defendant's apartment, the police found and seized plastic sandwich bags, inositol powder, cocaine, heroin, and a digital scale.

Defendant was charged with delivery of a controlled substance less than 50 grams in relation to the drug transaction with Osborn. In a separate file, defendant was charged with two counts of possession with intent to deliver a controlled substance less than 50 grams—one count as to the heroin and the other count as to the cocaine, both found in defendant's apartment. The cases were separately filed because the offenses were committed in different municipal jurisdictions; however, the court subsequently consolidated the two files. Defendant was convicted of all three charges. The top end of the minimum sentence guideline ranges for the offenses was 46 months, and the trial court sentenced defendant to a minimum prison term of 10 years (120 months) for each crime, reflecting a significant upward departure. The reasons given by the court for the departure will be discussed below. Defendant appeals by right.

Defendant first argues that his Fourth Amendment right to be free from unreasonable searches was violated because there was no probable cause showing a nexus between defendant's alleged drug trafficking activity and his apartment. The trial court rejected this argument following an evidentiary hearing on defendant's motion to suppress.

A trial court's factual findings at a suppression hearing are reviewed for clear error. *People v Williams*, 472 Mich 308, 313; 696 NW2d 636 (2005). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v Hornsby*, 251 Mich App 462, 466; 650 NW2d 700 (2002). "But the application of constitutional standards regarding searches and seizures to essentially uncontested facts is entitled to less deference; for this reason, we review de novo the trial court's ultimate ruling on the motion to suppress." *Williams*, 472 Mich at 313.

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." US Const, Am IV.[2] At the very heart of the Fourth Amendment is the right of a person to retreat into his or her own home and there be free from unreasonable intrusions by the government. *Payton v New York*, 445 US 573, 589-590; 100

---

[2] "The person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things shall issue without describing them, nor without probable cause, supported by oath or affirmation." Const 1963, art 1, § 11.

S Ct 1371; 63 L Ed 2d 639 (1980). "In general, a search or seizure within a home or its curtilage without a warrant is per se an unreasonable search under the Fourth Amendment." *People v Frederick*, 500 Mich 228, 234; 895 NW2d 541 (2017).

"A magistrate shall only issue a search warrant when he or she finds that there is a fair probability that contraband or evidence of a crime will be found in a particular place." *People v Franklin*, 500 Mich 92, 101; 894 NW2d 561 (2017). "Generally, in order for a search executed pursuant to a warrant to be valid, the warrant must be based on probable cause." *People v Hellstrom*, 264 Mich App 187, 192; 690 NW2d 293 (2004). "The judge or district court magistrate's finding of reasonable or probable cause shall be based upon all the facts related within the affidavit made before him or her." MCL 780.653. "Probable cause sufficient to support issuing a search warrant exists when all the facts and circumstances would lead a reasonable person to believe that the evidence of a crime or the contraband sought is in the place requested to be searched." *People v Ulman*, 244 Mich App 500, 509; 625 NW2d 429 (2001) (quotation marks and citation omitted). "When probable cause is averred in an affidavit, the affidavit must contain facts within the knowledge of the affiant rather than mere conclusions or beliefs." *Id.* The affidavit in support of a warrant request must be read in a common-sense and realistic manner. *People v Russo*, 439 Mich 584, 603; 487 NW2d 698 (1992). "[A]ppellate scrutiny of a magistrate's decision involves neither de novo review nor application of an abuse of discretion standard[;] [r]ather, the preference for warrants . . . requires the reviewing court to ask only whether a reasonably cautious person could have concluded that there was a 'substantial basis' for the finding of probable cause." *Id.* An affiant officer's experience is relevant to the establishment of probable cause. *Ulman*, 244 Mich App at 509. And police officers are presumptively reliable. *Id.*

In his affidavit, Detective VandenBerg first described his extensive experience investigating drug trafficking, which gave him, in part, a working knowledge of "the often subtle distinctions between a user of drugs as compared to a trafficker of drugs." Detective VandenBerg next provided details concerning the narcotics transaction at the party store, averring that he "could see [defendant] and Osborn make a hand to hand exchange inside [defendant's] vehicle." The detective further averred that Osborn, upon being stopped and found in possession of cocaine, stated that defendant sold him the cocaine for $20. Osborn provided Detective VandenBerg with defendant's phone number, which was the last number called from Osborn's phone, and the detective called the number and confirmed that "it rang to [defendant's] phone." Detective VandenBerg next reviewed defendant's extensive criminal history, indicating that defendant was currently on federal probation for a 2009 drug crime and that he had convictions for drug crimes in 2002 and 2005 involving the delivery or manufacture of cocaine and heroin. The detective then averred that he obtained defendant's address at the apartment from the Secretary of State, that defendant confirmed said address in speaking to police, and that when defendant left the party store after making the drug transaction he "drove north towards" the address.

Detective VandenBerg next clarified the difference between "user" traffickers and "profit" traffickers, explaining that profit traffickers tend "to maintain a base of operations where they can be contacted both by their suppliers and customers." He also detailed the types of evidence that the police are likely to find with respect to profit trafficking and traffickers. The detective further averred that he knew "from training and experience that drug dealers are known to not carry all of their product or proceeds on them at one time and they may leave them in a place that they believe is safe from law enforcement."

Even though the affidavit provided substantial evidence regarding the location of defendant's residence, there was no direct evidence that defendant was using his apartment as a base to sell drugs, that there were drugs or drug paraphernalia in the home, that defendant currently had in his possession a quantity of drugs beyond that sold to Osborn, or that defendant was selling drugs to multiple purchasers. But even if we assume that the affidavit did not provide probable cause that drugs would be found in defendant's apartment, application of the exclusionary rule is not justified. We turn to the good-faith exception to the exclusionary rule. In *People v Goldston*, 470 Mich 523, 525-526; 682 NW2d 479 (2004), our Supreme Court held:

> In this case, we must determine whether to recognize a "good-faith" exception to the exclusionary rule. In *United States v Leon*, 468 US 897; 104 S Ct 3405; 82 L Ed 2d 677 (1984), the United States Supreme Court interpreted US Const, Am IV and adopted a good-faith exception to the exclusionary rule as a remedy for unreasonable searches and seizures. Under *Leon*, the exclusionary rule does not bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant ultimately found to have been defective. The exclusionary rule in Michigan is a judicially created remedy that is not based on the text of our constitutional search and seizure provision, Const 1963, art 1, § 11. Indeed, records of the 1961 Constitutional Convention evidence an intent on behalf of the people of Michigan to retreat from the judge-made exclusionary rule consistent with the United States Supreme Court's interpretation of the Fourth Amendment in *Leon*. We therefore adopt the good-faith exception to the exclusionary rule in Michigan. The purpose of the exclusionary rule is to deter police misconduct. That purpose would not be furthered by excluding evidence that the police recovered in objective, good-faith reliance on a search warrant.

Here, we conclude that the police recovered evidence at defendant's apartment in objective or reasonable good-faith reliance on the search warrant. Although a close call, we reach this conclusion after taking into consideration the following facts or factors: Osborn called defendant to obtain drugs; defendant then drove to the party store and participated in the drug transaction with Osborn; defendant left the store and headed in the direction of his apartment; defendant had an extensive history of trafficking in drugs; the party store transaction suggested that defendant was once again selling drugs in light of his history; defendant had an established residence in the area; and Detective VandenBerg's extensive experience led him to believe that drugs would be found at defendant's home given all of the circumstances.[3] Accordingly, even if there was a lack of probable cause to issue the search warrant, the good-faith exception to the exclusionary rule did not permit suppression of the evidence.

In *People v Czuprynski*, 325 Mich App 449, 472; 926 NW2d 282 (2018), this Court discussed the circumstances in which the good-faith exception does not apply, stating:

> Reliance on a warrant is reasonable even if the warrant is later invalidated for lack of probable cause, except under three circumstances: (1) if the issuing

---

[3] We recognize that these facts and factors would also lend support for a determination that probable cause existed to issue the search warrant.

magistrate or judge is misled by information in the affidavit that the affiant either knew was false or would have known was false except for his or her reckless disregard of the truth; (2) if the issuing judge or magistrate wholly abandons his or her judicial role; or (3) if an officer relies on a warrant based on a "bare bones" affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

There is no indication that any of the averments in Detective VandenBerg's affidavit were false, nor can we conclude that the magistrate wholly abandoned his judicial role or that the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. We therefore hold that reversal is unwarranted.

Defendant next argues that his right to due process and a fair trial was violated when the trial court admitted hearsay statements made by Osborn and Jones. With respect to Osborn, defendant challenges the testimony of Detective Stoddard that concerned statements Osborn made after being pulled over by police that acknowledged participation in the drug transaction with defendant. Defendant contends that "[t]he only reason to have Osborn's statements repeated was to bolster Osborn's credibility as he was a drug addict who had at least seven prior crimes of theft or dishonesty and was testifying pursuant to a favorable cooperation agreement." With regard to Jones, defendant takes issue with the testimony of Detective VandenBerg that concerned statements Jones made that inculpated defendant in the drug transaction with Osborn. Defendant maintains that the purported non-hearsay goal of this testimony was to impeach Jones because he testified at trial that he could not remember the drug transaction at the party store. Defendant complains that the jury was never specifically instructed that the detective's testimony could only be used for the limited purpose of impeachment. Moreover, defendant argues that the testimony was inadmissible because the statements Jones made to Detective VandenBerg were only relevant to the central issue in the case, and there was no testimony by Jones, other than that claiming lack of recall of the drug transaction, for which his credibility was relevant.

We review for an abuse of discretion a trial court's decision to admit evidence. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). "When the decision regarding the admission of evidence involves a preliminary question of law, such as whether a statute or rule of evidence precludes admissibility of the evidence, the issue is reviewed de novo." *People v Washington*, 468 Mich 667, 670-671; 664 NW2d 203 (2003). A trial court necessarily abuses its discretion when it makes an error of law. *People v Duncan*, 494 Mich 713, 723; 835 NW2d 399 (2013).

MRE 801(c) defines hearsay as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 802 provides that "[h]earsay is not admissible except as proved by [the Michigan Rules of Evidence]." MRE 801(d)(1)(B) indicates that a statement is not hearsay if "[t]he declarant testifies at the trial . . . and is subject to cross-examination concerning the statement, and the statement is . . . consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive[.]" For a statement to be admissible under MRE 801(d)(1)(B), the declarant must testify at the trial and be subject to cross-examination, there must be an express or implied charge of recent fabrication or improper motive regarding the declarant's testimony, the statement must be a prior statement that is consistent with the declarant's in-court testimony, and the consistent statement must be made prior

-5-

to the time that the supposed motive to falsify arose. *People v Jones*, 240 Mich App 704, 707; 613 NW2d 411 (2000). A prior consistent statement that is made after the motive to fabricate arises does not fall within the ambit of MRE 801(d)(1)(B). *People v McCray*, 245 Mich App 631, 639; 630 NW2d 633 (2001); *People v Rodriquez (On Remand)*, 216 Mich App 329, 332; 549 NW2d 359 (1996).

Osborn's statements to Detective Stoddard were admissible under MRE 801(d)(1)(B). Osborn testified at trial and was subject to cross-examination, and there were express and implicit charges of recent fabrication, i.e., that Osborn was lying in order to receive the benefit of a plea deal. In his opening statement, defendant's attorney likened the prosecution's case to "Let's Make a Deal." And during cross-examination of Osborn, who testified before Detective Stoddard, defense counsel plainly implied by his questioning that Osborn was lying in light of his plea deal. Further, the statements Osborn made to the detective were consistent with Osborn's trial testimony. Finally, Osborn's prior consistent statements were made before the time that the supposed motive to fabricate arose, where Osborn's statements to Detective Stoddard were made shortly after the drug transaction took place, which was long before Osborn was offered the plea deal that purportedly motivated him to fabricate. Accordingly, the trial court did not err in allowing the admission of Osborn's statements.

With respect to Detective VandenBerg's testimony regarding statements made by Jones, assuming its inadmissibility, we simply cannot conclude that it was prejudicial or resulted in a miscarriage of justice. MCL 769.26;[4] *Lukity*, 460 Mich at 495-496 ("Therefore, the bottom line is that § 26 presumes that a preserved, nonconstitutional error is not a ground for reversal unless 'after an examination of the entire cause, it shall affirmatively appear' that it is more probable than not that the error was outcome determinative."). Osborn testified to purchasing cocaine from defendant. Also, cocaine was found in Jones's vehicle after he and Osborn were pulled over in the Meijer parking lot. And Detectives Stoddard and VandenBerg observed an exchange between Osborn and defendant in defendant's vehicle that resembled a drug deal, with Osborn exiting the SUV with a "cupped" hand. Even without the statements Jones made, the evidence that a drug transaction occurred at the party store was strong. Reversal is unwarranted.

Defendant next argues that the trial court abused its discretion when it imposed sentences that departed upward from guideline ranges for the drug offenses. The trial court first indicated that defendant did not have a good history. The court referenced five prior felonies, one misdemeanor, probation and parole violations, and multiple incarcerations. The trial court found

---

[4] MCL 769.26 provides:

No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.

that the guidelines did "not take into consideration . . . the full extent of [defendant's] record[.]" The court then stated:

> First of all, you now have seven delivery of drug cases. You are a drug dealer. You've been convicted seven times of it. I have no doubt, sir, that when you get back out, you're probably going to sell drugs again. You have not done well on federal parole. You have not done well on probation. They've ended in PVs. You have been non-cooperative throughout this whole process. You refused to get in a car. You refused to even discuss anything with the probation office with regards to the presentence report.
>
> I don't believe that you have accepted your responsibility in this matter in any way, shape or form.

Defendant contends that the 74-month upward departure violated the principle of proportionality and that the court failed to adequately justify the extent of the departures.

This Court reviews for reasonableness "[a] sentence that departs from the applicable guidelines range." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). In *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017), our Supreme Court provided elaboration on the "reasonableness" standard, stating:

> [T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the "principle of proportionality" set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), "which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender."

Factual findings related to a departure must be supported by a preponderance of the evidence and are reviewed for clear error. *People v Lawhorn*, 320 Mich App 194, 208-209; 907 NW2d 832 (2017). For purposes of sentencing, "a court may consider all record evidence, including the contents of a PSIR,[5] plea admissions, and testimony presented at a preliminary examination." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015).

The key test is not whether a sentence departs from or adheres to the guidelines range but whether the sentence is proportionate to the seriousness of the matter. *Steanhouse*, 500 Mich at 472. "The premise of our system of criminal justice is that, everything else being equal, the more egregious the offense, and the more recidivist the criminal, the greater the punishment." *People v Babcock*, 469 Mich 247, 263; 666 NW2d 231 (2003). Sentencing judges are "entitled to depart from the guidelines if the recommended ranges are considered an inadequate reflection of the proportional seriousness of the matter at hand." *Milbourn*, 435 Mich at 661. A sentence within the guidelines might be disproportionality lenient. *Id.* "Where a defendant's actions are so egregious that standard guidelines scoring methods simply fail to reflect their severity, an upward departure from the guidelines range may be warranted." *People v Granderson*, 212 Mich App

---

[5] PSIR stands for presentence investigation report.

673, 680; 538 NW2d 471 (1995). In *People v Steanhouse*, 313 Mich App 1, 46; 880 NW2d 297 (2015), aff'd in part, rev'd in part on other grounds 500 Mich 453 (2017), this Court indicated:

> Factors previously considered by Michigan courts under the proportionality standard included, among others, (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [Citations omitted.]

"[A] trial court must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (quotation marks and citations omitted). "When fashioning a proportionate minimum sentence that exceeds the guidelines recommendation, a trial court must justify why it chose the particular degree of departure." *People v Smith*, 482 Mich 292, 318; 754 NW2d 284 (2008). We note that our Supreme Court has now held "that due process bars sentencing courts from finding by a preponderance of the evidence that a defendant engaged in conduct of which he was acquitted." *People v Beck*, 504 Mich 605, 629; 939 NW2d 213 (2019).

In this case, the trial court was troubled by defendant's extensive criminal history involving drug trafficking, effectively concluding that there was little chance of rehabilitation, as defendant would probably return to dealing drugs when he reentered society. The record fully supports the trial court's conclusion that defendant is a recidivist drug dealer who is unlikely to change his ways, and there is nothing in the sentencing guidelines that directly and particularly address such an individual and circumstances. Defendant had multiple convictions in 2002 for possessing controlled substances with intent to deliver, multiple convictions in 2009 for possessing cocaine and heroin with intent to distribute, and then he continued the pattern by being convicted of the instant drug trafficking offenses in 2019. A maximum minimum sentence of just under four years—46 months—can reasonably be viewed as being grossly inadequate for someone who clearly gave no indication over a nearly 20-year period of a willingness to stop peddling cocaine and heroin in the community. Defendant had a total of 102 points for prior record variables (PRVs), giving him 27 more points than necessary to fit within the top PRV level in the Class D grid, MCL 777.65, suggesting an inadequacy of the guidelines relative to defendant's criminal history. And this is without even considering the drug-trafficking nature of the prior offenses.

Defendant argues that the trial court relied on his lack of cooperation with authorities in departing from the guidelines. Defendant contends that the trial court should have scored offense variable (OV) 19 for this behavior instead of using his conduct as a factor for an upward departure. OV 19 provides for an assessment of 10 points when an offender "interfered with or attempted to interfere with the administration of justice." MCL 777.49(c). Zero points were assessed for OV 19. Evidently, the court and the prosecution did not believe that OV 19 warranted any points. Defendant also contends that the trial court improperly punished him for not admitting guilt.

Although the trial court made some brief, offhanded references to defendant's lack of cooperation and failure to accept responsibility at the end of the sentencing hearing, the overall tone and focus of the court's ruling concerned defendant's long-time history of drug trafficking

and the likelihood that he will continue in that illegal venture in the future. We decline to upend the sentences on the basis of the court's closing cursory remarks.[6] Effectively, the trial court departed from the minimum sentence ranges and did so to the extent provided on the basis that defendant is a recidivist drug dealer whose rehabilitation is unlikely. We conclude that the trial court did not abuse its discretion or otherwise err by imposing a 10-year minimum sentence for the three offenses. The sentences were proportionate to the circumstances surrounding the offenses and the offender.

Finally, defendant argues that MCL 769.1k(1)(b)(*iii*) is unconstitutional. MCL 769.1k(1)(b)(*iii*) authorizes a court to impose "any cost reasonably related to the actual costs incurred by the trial court without separately calculating those costs involved in the particular case . . . ." Defendant argues that the statutory provision creates pressure for trial court judges to convict criminal defendants and impose costs; therefore, MCL 769.1k(1)(b)(*iii*) undermines a defendant's constitutional due-process right to appear before and be sentenced by a neutral arbiter. Defendant also contends that MCL 769.1k(1)(b)(*iii*) violates the separation-of-powers doctrine because it prevents the judicial branch from accomplishing its constitutionally-assigned functions of maintaining neutrality in criminal proceedings and in enforcing rules requiring neutrality by judges in criminal cases.

Defendant did not raise these constitutional claims below; therefore, our review is for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). In support of his claims, defendant relies on numerous financial reports regarding the imposition and collection of court costs, the disbursement of collected costs, and the funding of Michigan courts. But, as emphasized by the prosecution, these documents are not part of the record in this case, nor has defendant presented us with any legal basis to allow consideration of the documents or to expand the record. We have no evidence of record regarding the collection of court costs in the Kent Circuit Court, how any collected monies are disbursed, or the manner in which the circuit court is funded. The party seeking reversal on appeal has the burden to provide the court with a record that establishes the factual basis of his or her argument. *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000); see also MCR 7.210 (record on appeal). On this incomplete record, we cannot properly assess defendant's constitutional arguments. Accordingly, defendant cannot establish plain error affecting his substantial rights.

We affirm.

/s/ James Robert Redford
/s/ Jane E. Markey
/s/ Mark T. Boonstra

---

[6] Additionally, the record does not support a conclusion that the trial court based the sentences, even in part, on defendant's refusal to admit guilt, nor did the court attempt to get defendant to admit guilt. See *People v Dobek*, 274 Mich App 58, 104; 732 NW2d 546 (2007). We also find nothing inherently wrong in not assessing points for OV 19, while at the same time mentioning defendant's lack of cooperation.