PEOPLE v ULMAN

Docket No. 219603. Submitted October 17, 2000, at Detroit. Decided February 2, 2001, at 9:00 A.M. Leave to appeal sought.

Chester Ulman was convicted in 1986 by a jury in the Detroit Recorder's Court, Edward M. Thomas, J., of possession with intent to deliver more than 650 grams of cocaine. Before the trial, the defendant had moved unsuccessfully for the suppression of evidence of cocaine seized from his home pursuant to a search warrant, arguing that the affidavit prepared by an undercover police officer in support of the application for the search warrant contained false information such that probable cause for the search of the defendant's home was not established. In the affidavit, the affiant described how she twice purchased cocaine from "Mike" through "John" and the police surveillance of Mike and John during which they went to the defendant's home before the second sale of cocaine. The defendant argued that the affidavit was defective because it contained a statement that John, during interrogation by another police office, had admitted obtaining the cocaine at the defendant's home and that statement was contradicted by John's testimony at the suppression hearing, and because the affidavit incorrectly stated that the defendant and his son previously had been convicted of controlled substances offenses. The court denied the motion to suppress, and the defendant was tried and convicted. On appeal by the defendant, the Court of Appeals remanded the matter to the trial court for a hearing on the defendant's claim that trial counsel had provided ineffective assistance inasmuch as counsel had failed in having evidence of the cocaine suppressed. The trial court determined that the defendant had not been deprived of the effective assistance of counsel, and it denied the defendant's motion for a new trial. The Court of Appeals, MACKENZIE, P.J., and MICHAEL J. KELLY and L. P. BORRELLO, JJ., affirmed in an unpublished opinion per curiam, issued August 31, 1988 (Docket No. 93660). In 1997, the defendant moved in the trial court for relief from judgment, raising the same and additional claims regarding the affidavit in support of the search warrant and ineffective assistance of counsel. The court, Daphne Means Curtis, J., granted the motion, ruling that the affidavit contained false statements and material omissions such that probable cause for the search of the defendant's home

was not established, and that trial counsel had been ineffective in challenging the affidavit. The prosecution appealed by leave granted.

The Court of Appeals *held*:

Judge Curtis abused her discretion in granting relief from judgment.

1. When making a new and independent assessment of the relative credibility of John and a police witness with respect to whether John had admitted during interrogation that he had obtained the cocaine at the defendant's home, Judge Curtis abused her discretion in determining that John was more credible. Judge Thomas' earlier conclusion that the police witness was more credible was not challenged on appeal. If it had been, the Court of Appeals would have deferred to the finder of fact.

2. The misstatement in the affidavit concerning prior convictions of the defendant and his son, which Judge Curtis determined were crucial, were inconsequential and not necessary to a finding of probable cause because the affidavit correctly stated that the defendant and his son previously had been arrested for controlled substances offenses.

3. The fact that the affidavit omitted information concerning John visiting another house on the day before he visited the defendant's home, John and Mike stopping at a gasoline station and a party store on their way from the defendant's home to the hotel where the second sale of cocaine to the affiant was made, and John going to a hotel room other than the one where cocaine was sold to the affiant and cocaine being found in that other hotel room did not render the affidavit defective. The affidavit still would have established probable cause had the omitted information been added inasmuch as John admitted that the cocaine sold to the affiant was obtained at the defendant's home and John and Mike remained under police surveillance at the gasoline station and the party store.

4. Judge Curtis erred in ruling that John's statements to a police officer were improperly included in the affidavit in view of the fact that the police did not establish John's reliability or veracity as an informant and in view of John's testimony that he was not given *Miranda* warnings before his statement. Because John was not an unnamed informant, it was not necessary to vouch for his credibility in the affidavit. The alleged failure to inform John of his rights under *Miranda*, even if true, does not preclude the use of his statement to secure the search warrant.

Reversed.

1. CRIMINAL LAW — POSTAPPEAL RELIEF — RELIEF FROM JUDGMENT — APPEAL.

    A trial court's grant of relief from a judgment of conviction and sentence is reviewed on appeal for abuse of discretion (MCR 6.500 *et seq.*).

2. SEARCHES AND SEIZURES — SEARCH WARRANTS — PROBABLE CAUSE.

    Probable cause sufficient to support issuing a search warrant exists when all the facts and circumstances would lead a reasonable person to believe that the evidence of a crime or the contraband sought is in the place requested to be searched.

3. SEARCHES AND SEIZURES — SEARCH WARRANTS — PROBABLE CAUSE — AFFIDAVITS.

    An affidavit averring probable cause for a search must contain facts within the knowledge of the affiant rather than mere conclusions or beliefs; nevertheless, the affiant's experience is relevant to the establishment of probable cause; police officers are presumptively reliable, self-authenticating details establish reliability, and an independent police investigation that verifies information provided by an informant can also support issuance of a search warrant.

4. SEARCHES AND SEIZURES — SEARCH WARRANTS — AFFIDAVITS — FALSE INFORMATION — MATERIAL OMISSIONS.

    A person who challenges an affidavit in support of an application for the issuance of a search warrant on the basis that the affidavit contains false information or material omissions must show by a preponderance of the evidence that the affiant knowingly and intentionally, or with reckless disregard for the truth, inserted false information or omitted material information and that the insertion or omission was necessary to the finding of probable cause; invalid portions of an affidavit may be severed, and the validity of the resultant warrant may be tested by the information remaining in the affidavit.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *John D. O'Hair*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Olga Agnello*, Assistant Prosecuting Attorney, for the people.

*Craig A. Daly*, for the defendant.

Before: BANDSTRA, C.J., and SAAD and METER, JJ.

BANDSTRA, C.J. This case is before this Court for the second time. On January 15, 1986, following a jury trial, defendant, Chester Ulman, was convicted of possession with intent to deliver more than 650 grams of cocaine, MCL 333.7401(2)(a)(i); MSA 14.15(7401)(2)(a)(i). Defendant was sentenced to life in prison. Before trial, defendant had unsuccessfully challenged statements contained in the affidavit supporting the search warrant that led to the seizure of cocaine from defendant's house. This Court affirmed defendant's conviction and our Supreme Court denied leave to appeal. *People v Ulman*, unpublished opinion per curiam of the Court of Appeals, issued August 31, 1988 (Docket No. 93660), lv den 432 Mich 879 (1989). Defendant filed a motion for relief from judgment in 1997, which the trial court granted. The prosecutor appeals by leave granted. We reverse.

On March 27, 1985, at approximately 1:00 A.M., undercover police detective Dana DeClark executed a search warrant at 12923 Caldwell (hereinafter the Caldwell house) in the city of Detroit. Defendant was the owner of the residence, but he was not at home when the police searched his house. DeClark was accompanied by several other officers, including Sergeant Ronald Lapp and Lieutenant James Tuttle. On top of a bedroom dresser, DeClark found a small bag of cocaine, a small bag of marijuana, a digital scale, an envelope addressed to defendant, and cash in the amount of $2,289. The police also found suspected narcotics and narcotics-related materials in a briefcase and a safe, which contained $855. Defendant was arrested and charged with possession with intent to deliver 650 grams or more of cocaine, MCL 333.7401(2)(a)(i); MSA 14.15(7401)(2)(a)(i).

Before trial, defendant filed a motion to suppress the evidence of cocaine seized at his home on the ground that the affidavit in support of the search warrant was defective. Defendant argued that the affiant, DeClark, made false representations regarding statements made to her by an individual, John, which indicated that John had obtained drugs from defendant's residence. An evidentiary hearing was held before Judge Edward M. Thomas on October 9, 1985.

The affidavit in support of the search warrant stated:

1. The affiant is a Detective with the Warren Police Department assigned to the County of Macomb Enforcement Team (COMET) to investigate the illegal trafficking of controlled substances.

2. On 3/25/85, the affiant while acting in an undercover capacity met a subject MIKE (last name unknown) in the city of Warren for the purpose of arranging the purchase of ⅛ ounce of cocaine. MIKE advised that his friend JOHN (last name unknown) would go to Detroit to pick up the cocaine and return in a short time, at which time JOHN left MIKE and the affiant.

3. Approximately 45 minutes later JOHN returned and met with MIKE, at which time MIKE produced ⅛ ounce of suspected cocaine for the affiant.

4. The suspected cocaine purchased from MIKE through JOHN was analyzed by John Siefert of the Michigan State Police Crime Lab in Madison Heights and was determined to be Cocaine, a Schedule 2, Non-narcotic, controlled under the Michigan Public Health Code.

5. On 3/26/85 at approximately 8:00 P.M., the affiant while acting in an undercover capacity, once again met MIKE in the city of Warren for the purpose of purchasing cocaine. MIKE advised that he would once again be going with his friend JOHN to their "supplier" to pick up the cocaine. At that time, the affiant gave MIKE $650.00 in pre-recorded U.S. currency to purchase ¼ ounce of cocaine.

6. Prior to meeting MIKE on 3/26/85, the affiant recorded the serial numbers on $765.00 in U.S. Currency by making photocopies of the serialized bills and attaching them to the affidavit.

7. Upon leaving the affiant MIKE and JOHN were followed by the surveillance team to the residence at 12923 Caldwell St. in the city of Detroit, Wayne County.

8. Upon arriving at 12923 Caldwell St., Detroit, JOHN was observed entering the residence by Detective/Sergeant Ronald Lapp of the surveillance team.

9. After approximately 5 minutes JOHN exited the residence, re-entered the suspect vehicle, and was followed by the surveillance team back into the city of Warren.

10. After a short period of time MIKE recontacted the affiant at which time he (MIKE) delivered ¼ ounce of suspected cocaine and was arrested for Delivery of Cocaine.

11. Upon being searched incident to his arrest, none of the pre-recorded buy money previously mentioned was recovered from MIKE.

12. Based upon observations of the surveillance team JOHN was also arrested in Possession of Cocaine.

13. Upon being searched incident to his arrest, $50.00 in pre-recorded U.S. currency was recovered from JOHN'S person.

14. Upon being interviewed by Detective/Sergeant Lapp, JOHN admitted that he had purchased the cocaine through a subject known as TONY ULMAN but that he had picked the cocaine up from an unidentified woman at the residence on Caldwell St. JOHN also advised that the residence on Caldwell St. is owned by a CHET ULMAN; JOHN paying $600.00 for the cocaine.

15. The affiant was advised by Detective/Sergeant Lapp that he (Lapp) has personally arrested both CHESTER ULMAN and TONY ULMAN in the past for cocaine trafficking AND that both subjects have convictions for felony violations of the Michigan Public Health Code.

16. The ¼ ounce of suspected cocaine purchased by the affiant from MIKE through JOHN on 3/26/85 was field tested positive for cocaine by the affiant.

At the hearing on the motion to suppress, police officers testified that, on March 26, the day before the search warrant was executed, DeClark and others were engaged in undercover surveillance activities. DeClark gave marked currency to Mike, who was an associate of John, through whom cocaine was to be obtained. A police surveillance crew followed Mike and John to the Caldwell house and then to the Coventry Inn, a motel in Warren. John and Mike made two other stops during their trip to the Coventry Inn from the Caldwell house, at a party store and a gasoline station. Although the affidavit made no mention of those stops, undercover officers followed Mike and John into these businesses to assure that they did not procure cocaine at either place. At the Coventry Inn, Mike gave DeClark an amount of cocaine while John remained in another room. Following the delivery, cocaine was found in John's room and some of the marked currency was also found in his possession.

Lieutenant Tuttle testified that, upon questioning at the police station following the arrests, John stated that "he had called Tony at the bar to set up the deal, and that Tony had okayed them going over to the house on Caldwell to get the cocaine." Defendant's son is Tony Ulman. John also reportedly told Sergeant Lapp[1] that he went to the Caldwell address and picked up the cocaine from an unnamed woman. In contrast, John testified that he did not obtain the cocaine from the Caldwell house and, when specifically asked whether he had made the statement

---

[1] Tuttle testified about the statement made to Lapp, explaining that he was in the room where Lapp interrogated John.

regarding the unidentified woman, said: "I don't remember. I don't think I did, no."

Tuttle also testified regarding paragraph fifteen of the affidavit, which states that Tony Ulman had felony convictions for cocaine trafficking. The lieutenant testified that, in fact, after checking court records, he determined that, while arrests had been made, charges against Tony had been dismissed.

Judge Thomas ruled that paragraph fourteen of the affidavit should stand. The court stated that, after hearing the testimony of both John and Tuttle, it found nothing "that would indicate that it was not being set forthrightly and honestly at the time that this affidavit was typed and presented to the magistrate for signature." With regard to paragraph fifteen, Judge Thomas found that the error was "an honest mistake and was not a deliberate falsehood or a wreckless [sic] disregard for the truth at the time that Lieutenant Tuttle indicated that Tony Ulman had a cocaine possession conviction." Judge Thomas further stated that if the entire paragraph fifteen were stricken, it would not have any bearing on the validity of the affidavit. The court found the wording of the search warrant to be in conformity with the testimony of Tuttle. Judge Thomas denied defendant's motion to suppress evidence obtained pursuant to the search warrant.

Defendant was convicted and sentenced as outlined above. Defendant appealed as of right and this Court remanded the matter to the trial court for a *Ginther*[2] hearing on defendant's claim of ineffective assistance of counsel.

---

[2] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

On remand, defendant did not address his trial counsel's challenge to the validity of the affidavit supporting the search warrant, other than mentioning that a motion to suppress had been filed and argued on that basis. Judge Thomas concluded that defendant had not been deprived of the effective assistance of counsel, and denied the motion for a new trial. As previously noted, this Court affirmed defendant's conviction and sentence. *People v Ulman*, unpublished opinion per curiam of the Court of Appeals, issued August 31, 1988 (Docket No. 93660). The Supreme Court denied leave to appeal on March 7, 1989. *People v Ulman*, 432 Mich 879 (1989).

Eight years later, on April 16, 1997, defendant filed a motion for relief from judgment pursuant to MCR 6.500 *et seq.* Following a hearing, Judge Daphne Means Curtis ruled, for reasons that are discussed below, that the affidavit was insufficient to support the search warrant. The prosecution filed an application for leave to appeal with this Court, which was granted. The scope of this appeal is limited to those issues raised in the prosecution's application and brief.

A trial court's grant of relief from judgment is reviewed generally for an abuse of discretion. *People v Osaghae*, 460 Mich 529, 534; 596 NW2d 911 (1999); *People v Reed*, 198 Mich App 639, 645; 499 NW2d 441 (1993), aff'd 449 Mich 375; 535 NW2d 496 (1995). Judge Curtis granted relief from judgment on the basis of her findings that the affidavit included false statements, that there were material omissions, and that, had these errors been corrected, the affidavit would have been insufficient to support a finding of probable cause for the search. Judge Curtis reasoned

that, because defendant's counsel at trial and on appeal had failed to effectively represent him in uncovering and arguing these errors in the affidavit, he had been denied the effective assistance of counsel. The prosecutor argues that Judge Curtis abused her discretion in her conclusions regarding the affidavit that formed the basis of the search.

A magistrate may issue a search warrant only when it is supported by probable cause. MCL 780.651(1); MSA 28.1259(1)(1); *People v Sloan*, 450 Mich 160, 166-167; 538 NW2d 380 (1995). "Probable cause sufficient to support issuing a search warrant exists when all the facts and circumstances would lead a reasonable person to believe that the evidence of a crime or the contraband sought is in the place requested to be searched." *People v Brannon*, 194 Mich App 121, 132; 486 NW2d 83 (1992). "The magistrate's findings of reasonable or probable cause shall be based on all the facts related within the affidavit made before him or her." MCL 780.653; MSA 28.1259(3). When probable cause is averred in an affidavit, the affidavit must contain facts within the knowledge of the affiant rather than mere conclusions or beliefs. *Sloan, supra* at 168-169; *People v Cooper*, 166 Mich App 638, 652; 421 NW2d 177 (1987). However, the affiant's experience is relevant to the establishment of probable cause. *People v Darwich*, 226 Mich App 635, 639; 575 NW2d 44 (1997). Police officers are presumptively reliable; in addition, self-authenticating details establish reliability. *People v Powell*, 201 Mich App 516, 523; 506 NW2d 894 (1993) (CORRIGAN, J.). An independent police investigation that verifies information provided by an informant can also support issuance of a

search warrant. *People v Harris*, 191 Mich App 422, 425-426; 479 NW2d 6 (1991).

The defendant has the burden of showing, by a preponderance of the evidence, that the affiant knowingly and intentionally, or with a reckless disregard for the truth, inserted false material into the affidavit and that the false material was necessary to the finding of probable cause. *Franks v Delaware*, 438 US 154, 171-172; 98 S Ct 2674; 57 L Ed 2d 667 (1978); *People v Stumpf*, 196 Mich App 218, 224; 492 NW2d 795 (1992). This standard also applies to material omissions from affidavits. *Id.* The invalid portions of an affidavit may be severed, and the validity of the resultant warrant may be tested by the information remaining in the affidavit. *People v Melotik*, 221 Mich App 190, 200-201; 561 NW2d 453 (1997).

The prosecutor argues that paragraph fourteen of the affidavit is crucial because, standing alone, it is a sufficient basis for the search warrant. We agree with that assessment and also with the prosecutor's criticism of Judge Curtis' determination that paragraph fourteen contained false statements. At issue here was the credibility contest between John and the police witnesses. Judge Thomas had previously addressed the issue of paragraph fourteen, and heard testimony from both Tuttle and John.[3] John's testimony was somewhat equivocal. When asked whether he told Lapp that he obtained the cocaine from the Caldwell address, John responded: "I don't remember. I don't think I did, no." In contrast, Tuttle's testimony that John had told Lapp that he obtained the cocaine

---

[3] John had testified in an earlier proceeding. His testimony was incorporated by reference at the October 9, 1985, hearing.

from the Caldwell address was without any qualification. On the basis of his assessment of the two witnesses, Judge Thomas found Lieutenant Tuttle to be more credible and concluded that paragraph fourteen did not include any misstatement.

Some thirteen years later, Judge Curtis made a new and independent assessment of the witnesses' relative credibility and sided with John, rather than the police. We conclude that Judge Curtis' reweighing of the evidence was an abuse of discretion. Judge Thomas' earlier conclusion that Tuttle was telling the truth was not challenged on appeal. If it had been, as with any other determination of the relative credibility of witnesses, this Court would have deferred to the factfinder. *People v Parker*, 230 Mich App 337, 341; 584 NW2d 336 (1998); *People v Williams*, 171 Mich App 234, 237; 429 NW2d 649 (1988). We conclude that the same approach must be followed in the context of a motion for relief from judgment such as was presented here.

There is nothing in the record to suggest that Judge Thomas was improperly denied information that might have affected his determination of the credibility question.[4] Judge Curtis did not reference Judge Thomas' conclusion regarding credibility, much less give any suggestion regarding why she thought it was incorrect. The substance of the conflicting testimony did not change in any significant way. We conclude that Judge Curtis abused her discretion in deleting paragraph fourteen from the affidavit and determining

---

[4] As discussed below, any misstatements or omissions by the police that were not brought to Judge Thomas' attention were nonconsequential to the probable cause determination and, thus, no bad motive can be ascribed to them.

whether there was sufficient grounds for the search warrant apart from that paragraph.

Next, Judge Curtis addressed the misstatements contained in paragraph fifteen of the affidavit. Judge Curtis found that the statement that defendant and Tony had previously been convicted of drug offenses was both incorrect and intentional. However, we conclude that this misstatement, true or false, intentional or not, was inconsequential and unnecessary to a finding of probable cause. The fact remained, as paragraph fifteen correctly stated, that defendant and Tony had been arrested for drug offenses. Those arrests and whether they had resulted in convictions had little to do with the event on March 26, 1985, as observed by and reported to the police officers. Judge Thomas concluded that removing paragraph fifteen in its entirety would not affect a finding of probable cause. We agree. See *Melotik, supra* at 200-201.

With regard to materially omitted facts, Judge Curtis considered a number of issues that were not raised before Judge Thomas. First, Judge Curtis determined the affidavit should have described prior drug surveillance activity, which did not involve the Caldwell house. The affidavit omitted the fact that on March 25, 1985, the police followed John to a different Detroit address, on Goldengate. Judge Curtis concluded that the affidavit's reference to Mike's remark that he would "once again" go to his supplier to pick up the cocaine was intended to mislead the magistrate into believing that John went to the Caldwell house on *both* March 25 and March 26, 1985. Judge Curtis decided that the affidavit improperly omitted another fact, that John and Mike stopped at a gasoline station and a party store before returning to the

Coventry Inn. Finally, Judge Curtis reasoned that the affidavit improperly omitted the fact that John and Mike proceeded to another room at the Coventry Inn before delivering the cocaine to DeClark, and that the other room was subsequently found to contain cocaine and a scale.

We conclude that, even if the omitted material is inserted into the affidavit, probable cause remains. The activities on March 25, 1985, had little, if anything, to do with the activities on March 26, 1985. On that day, the police surveillance team watched John enter the Caldwell home. No one contests that. Further, we accept Judge Thomas' conclusion that, after his arrest, John told Lapp that he had procured the cocaine while he was at the Caldwell home. We fail to see how the credibility of this straightforward account would be affected by whether John had (or had not) visited that same address the day before. Further, we note that the affidavit did not state that anyone would "once again" go to the Caldwell home; it only stated that a visit would "once again" be made with a drug supplier at an unidentified place.

The stops at the party store and the gasoline station were not improperly omitted from the affidavit. Lapp testified that an undercover officer followed John into the station and the store to ensure that the drugs were not procured at these locations. Had the affidavit mentioned these stops, this fact would have been included, making this account of no consequence to the probable cause determination.

John's explanation of why he went to another room at the Coventry Inn before any delivery was made to DeClark in her room was incredible. John claimed that he had the cocaine all the time, and that he only

drove to the Caldwell house after arranging the deal with DeClark because he did not want Mike to know that fact. In any event, we fail to see how any affidavit reference to the stop at the other room would have undermined the conclusion that there was probable cause to search the Caldwell house, when two officers observed John go there and John specifically stated that was where he obtained the cocaine.

Finally, Judge Curtis reasoned that, because John had never been used as a police informant before, "the police could not and did not establish his reliability or veracity as an informant." The court also relied on John's testimony at the hearing that he did not receive Miranda[5] warnings at the time of his arrest. Accordingly, the court concluded that John's statements to Lapp were improperly included in the affidavit. We disagree with these conclusions. First, John was not an unnamed informant and, therefore, it was not necessary to vouch for his credibility in the affidavit. MCL 780.653; MSA 28.1259(3). Further, the alleged failure to inform John of his rights under Miranda before he gave his statement, even if true, does not preclude use of John's statement to secure the search warrant. Melotik, supra at 198-199.

In sum, we conclude that Judge Curtis abused her discretion in concluding that the affidavit was insufficient to show probable cause for a search of the Caldwell address.[6] Accordingly, we further conclude

---

[5] Miranda v Arizona, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[6] The prosecutor argues on appeal that Judge Curtis also erred in determining that the Michigan Court Rules pertaining to postappeal relief, effective October 1, 1989, did not apply retroactively to this case. See MCR 6.500 et. seq. We need not determine that question because, regardless of whether those rules apply, we conclude that Judge Curtis committed error requiring reversal in granting defendant relief from judgment.

that any argument that defense counsel might have made with respect to the affidavit's sufficiency, at trial or upon subsequent appeal, would have been to no avail. There can be no finding of ineffective assistance of counsel where there could have been no effect on the outcome of defendant's case. *People v Nimeth*, 236 Mich App 616, 624-625; 601 NW2d 393 (1999).

We reverse.