*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 14, 2025
2:50 PM

Plaintiff-Appellee,

v

No. 369061
Lapeer Circuit Court
LC No. 2020-013857-FC

JEFFREY LEE SMITH,

Defendant-Appellant.

Before: MARIANI, P.J., and MURRAY and TREBILCOCK, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree premediated murder, MCL 750.316, and carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to life imprisonment for the first-degree murder conviction and two years' imprisonment for the felony-firearm conviction.[1] We affirm.

## I. BACKGROUND

This matter stems from a shooting at a gas station. Defendant arrived at the gas station in a Buick Regal. After fueling and purchasing items from the store at the gas station, defendant began to leave the gas station. While waiting to exit the gas station lot, the victim entered the same driveway in a black Chevrolet Avalanche. The victim drove over the curb because defendant did not provide enough room in the driveway. A verbal altercation occurred. Defendant drove away, but quickly returned to the gas station. While driving around, defendant removed a Smith and Wesson 38 Special with a pink grip from the center console of the Buick and put it in his pocket. After defendant reentered the parking lot, he pulled up next to another pump. The victim pulled up next to defendant. While sitting in the Buick with the front passenger side window partially rolled down, defendant raised his right arm and pointed the revolver at the victim, who was sitting

---

[1] The judgment of sentence was amended to reflect (1) defendant was ineligible for parole for his first-degree murder conviction and (2) defendant received 63 days of jail credit for the felony-firearm conviction, as opposed to 68 days of jail credit.

in his Chevy. The victim placed his left arm outside of the driver's side window briefly, put it back inside the Chevy, and then stepped out of his vehicle. The victim tried opening the passenger door of the Buick, but had to first close the driver side door to the Chevy. After closing the Chevy's door, the victim opened the passenger door of the Buick and reached inside with his left arm. Defendant noticed the victim was holding a crowbar in his right hand. With his arm fully extended, defendant fired a gunshot at the victim, causing the victim to back away momentarily. The victim began "swinging" the crowbar inside the Buick with his right arm. Defendant fired a second gunshot at the victim. The victim walked to the driver's side door and struck the window twice with the crowbar. Defendant drove to and entered the store. Meanwhile, the victim collapsed in the parking lot. Minutes later, police arrived and arrested defendant. The victim was taken to the hospital and pronounced dead.

An investigation ensued. Craig Gormley, a Detective Sergeant at the Lapeer City Police Department, prepared an affidavit for a search warrant seeking records from (1) the victim's Facebook profile and (2) three Facebook profiles affiliated with defendant. A search warrant was authorized by a magistrate. Before trial, the prosecution "moved to admit three statements recovered from a search of defendant's social media" under MRE 404(b). *People v Smith*, unpublished per curiam opinion of the Court of Appeals, issued January 19, 2023 (Docket No. 362367), pp 1-2. The prosecution moved to admit two statements that "concerned an incident in Imlay City, Michigan (the 'Imlay City statements')" and "a third statement from November 9, 2019 (the 'November 9 statement')." *Id*. at 2-3. "The trial court denied the motion, finding the statements were irrelevant to the theory of self-defense." *Id*. at 2.

The prosecution filed an interlocutory appeal. *Id*. at 1. This Court concluded that "the November 9 statement is not admissible as other-acts evidence under MRE 404(b)," but "[t]he Imlay City statements were other-acts evidence." *Id*. at 3. This Court ruled that the trial court erred by concluding that the Imlay City statements were not relevant, and remanded "for consideration of whether the Imlay City statements satisfy the other three . . . factors—proper purpose, probative value in relation to unfair prejudice, and limiting instructions." *Id*. at 5.

After remand, the prosecution moved to admit (1) the Imlay City statements under MRE 404(b) and (2) the November 9 statement as an admission by a party opponent under MRE 801(d)(2). Defendant opposed the motion. After a hearing, the trial court denied in part and granted in part the prosecution's motion "subject to a proper foundation for its admission being laid at trial and subject to the limitations the court has outlined in this opinion." The trial court concluded that "the probative value of the Imlay City statements is substantially outweighed by the danger of unfair prejudice except as to the bare statement that the defendant and his wife were carrying weapons at that time" and "the probative value of the November 9 statement will not be substantially outweighed by the risk of unfair prejudice after applying the redactions the [trial] court has directed." At trial, the prosecution successfully moved to admit two photographs—one of the revolver and one of ammunition—taken from defendant's Facebook account. The prosecution successfully moved to admit two redacted statements made in reference to the revolver

by defendant,[2] as well as another redacted statement by defendant on Facebook.[3] Defendant made these statements on Facebook to Robert King. As noted, the jury found defendant guilty, and this appeal followed.

## II. ANALYSIS

## A. SUFFICIENCY OF THE EVIDENCE

Defendant contends that there was insufficient evidence to sustain his conviction of first-degree premediated murder, and the prosecution failed to sufficiently disprove his assertion of self-defense, resulting in a denial of his right to due process.

"This Court reviews de novo defendant's challenge to the sufficiency of the evidence." *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). "We view the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime to have been proved beyond a reasonable doubt." *Id*. "A prosecutor need not present direct evidence of a defendant's guilt. Rather, [c]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011) (quotation marks and citation omitted; alteration in original). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). "A jury, and not an appellate court, observes the witnesses and listens to their testimony; therefore, an appellate court must not interfere with the jury's role in assessing the weight of the evidence and the credibility of the witnesses." *People v Kenny*, 332 Mich App 394, 403; 956 NW2d 562 (2020).

"[D]ue process requires the prosecution to prove every element beyond a reasonable doubt." *People v Oros*, 502 Mich 229, 239-240 n 3; 917 NW2d 559 (2018). "At common law, a killing constituted murder if it was done with malice aforethought." *People v Walker*, 330 Mich App 378, 383; 948 NW2d 122 (2019).

> The elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation. To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem. Premeditation and deliberation may be inferred from all the facts and circumstances, but the inferences must have support in the record and cannot be

---

[2] The first statement was: "Mama's not mine I have her shi* over it too I go no self respecting gun owner would own a pink smith she goes my gun fuc* off lol[.]" The second statement was: "Nice pocket gun for gas stations and that thinking about buying myself one[.]"

[3] The statement was: "I had a .45 in the console and mama has a .38 Smith in the glove box lol[.]"

arrived at by mere speculation. [*People v Bass*, 317 Mich App 241, 265-266; 893 NW2d 140 (2016) (quotation marks and citations omitted).]

Regarding premeditation, this Court has explained:

> Premeditation is not statutorily defined and cannot be evaluated in a rigid and mechanical manner. Premeditation cannot be found where a defendant acts on a sudden impulse. The brutality and violence of a killing does not, by itself, show premeditation. However, premeditation may be established by circumstantial evidence tending to show that a defendant had an opportunity to think about, evaluate, or take a second look at their actions. The opportunity must be adequate, but it need not be long. Premeditation may be established through evidence of the following factors: (1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide. [*Walker*, 330 Mich App at 383-384 (quotation marks and citations omitted).]

The trier of fact must "determine whether there was sufficient time for a reasonable person to subject his or her action to a second look." *Oros*, 502 Mich at 242 (quotation marks and citations omitted). "While the minimum time necessary to exercise this process is incapable of exact determination, . . . premeditation and deliberation require only a brief moment of thought or a matter of seconds." *Id*. at 242-243 (quotation marks and citations omitted). "[M]inimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

As to defendant's argument on self-defense, "[a]s a general matter, a defendant who asserts the affirmative defense of self-defense admits the crime but seeks to excuse or justify its commission." *People v Triplett*, 499 Mich 52, 57; 878 NW2d 811 (2016) (quotation marks and citation omitted). Generally a defendant may assert self-defense under these circumstances:

> As a general rule, the killing of another person in self-defense by one who is free from fault is justifiable homicide if, under all the circumstances, he honestly and reasonably believes that he is in imminent danger of death or great bodily harm and that it is necessary for him to exercise deadly force. The necessity element of self-defense normally requires that the actor try to avoid the use of deadly force if he can safely and reasonably do so, for example by applying nondeadly force or by utilizing an obvious and safe avenue of retreat. [*People v Riddle*, 467 Mich 116, 119; 649 NW2d 30 (2002) (citations omitted).]

"[A] person is *never* required to retreat from a sudden, fierce, and violent attack; nor is he required to retreat from an attacker who he reasonably believes is about to use a deadly weapon." *Id*. "[O]nce the defendant satisfies the initial burden of production, the prosecution bears the burden of disproving the common law defense of self-defense beyond a reasonable doubt." *People v Dupree*, 486 Mich 693, 710; 788 NW2d 399 (2010). "[A]n initial aggressor (i.e., one who is the first to use deadly force against the other) . . . is generally not entitled to use deadly force in self-

defense." *People v Rajput*, 505 Mich 7, 12; 949 NW2d 32 (2020) (quotation marks and citation omitted).

Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could conclude the elements of first-degree premeditated murder were established beyond a reasonable doubt and that the prosecution disproved self-defense beyond a reasonable doubt. The surveillance videos from the gas station, testimony from Brandon Gillie, a delivery driver at Cintas who was making a delivery at the time of the shooting, and statements made by defendant, showed defendant and the victim initially confronted each other when defendant was pulling out of the gas station. The victim was upset and yelled at defendant, who proceeded to exit the Buick. After defendant got back inside the Buick, the victim exited the Chevy, when a "couple of F-bombs" were exchanged. The evidence showed that after defendant exited the gas station, he promptly returned to the parking lot using another driveway. Defendant pulled to the "end pump to clear [his] head for a minute" and considered his confrontation with the victim to be "over," maintaining he was not "thinking about [the victim]." Defendant stated he returned to "warn" the staff at the gas station about the victim and call the police. However, sometime after the first encounter, defendant took the revolver out of his vehicle's center console and placed it in his pocket.

Defendant's contention that the victim was the aggressor during the second confrontation is meritless. The evidence presented showed that defendant initiated the second confrontation by (1) electing to return to the gas station after having left and then (2) aiming the revolver at the victim. Of importance, defendant had the opportunity to avoid further confrontation with the victim by, for example, driving away and not returning to the gas station. Further, there was no evidence the victim had a gun or that defendant received any injuries. Quite simply, there was no evidence justifying the use of deadly force in self-defense by defendant.

## B. SEARCH OF DEFENDANT'S FACEBOOK

Defendant also asserts, for the first time on appeal, that the Facebook search was illegal and the results of the search, i.e., searched messages and photographs, should have been suppressed because: (1) the search warrant affidavit did not provide probable cause to search defendant's Facebook account and (2) the search warrant was a general warrant, which did not meet the particularity requirement.

Regarding the unpreserved evidentiary argument, generally:

A trial court's ruling on a motion to suppress evidence is reviewed for clear error, but its conclusions of law are reviewed de novo. A magistrate's determination of probable cause should be paid great deference by reviewing courts. Appellate review of a magistrate's determination whether probable cause exists to support a search warrant involves neither de novo review nor application of an abuse of discretion standard. Rather, the preference for warrants . . . requires the reviewing court to ask only whether a reasonably cautious person could have concluded that there was a substantial basis for the finding of probable cause. [*People v Unger*, 278 Mich App 210, 243-244; 749 NW2d 272 (2008) (quotation marks and citations omitted).]

However, because the issue is unpreserved, "[w]e review unpreserved errors for plain error affecting substantial rights." *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014). To establish this, the following must be met:

> 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice. Finally, once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence. [*People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999) (quotation marks and citations omitted; alteration in original).]

"Both the United States Constitution and the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures." *People v Pagano*, 507 Mich 26, 31-32; 967 NW2d 590 (2021); see also US Const, Am IV; Const 1963, art 1, § 11. "Probable cause to issue a search warrant exists if there is a substantial basis for inferring a fair probability that contraband or evidence of a crime exists in the stated place. The affidavit underlying the warrant must be read in a common-sense and realistic manner." *Unger*, 278 Mich App at 244 (quotation marks and citations omitted); see also *People v Russo*, 439 Mich 584, 604; 487 NW2d 698 (1992). "When probable cause is averred in an affidavit, the affidavit must contain facts within the knowledge of the affiant rather than mere conclusions or beliefs. However, the affiant's experience is relevant to the establishment of probable cause." *People v Ulman*, 244 Mich App 500, 509; 625 NW2d 429 (2001) (citations omitted).

> A magistrate shall only issue a search warrant when he or she finds that there is a fair probability that contraband or evidence of a crime will be found in a particular place. A magistrate's finding of probable cause and decision to issue a search warrant are reviewed to ensure that the magistrate possessed a substantial basis for . . . conclud[ing] that a search would uncover evidence of wrongdoing. . . . Judicial deference to a magistrate's issuance of a warrant is a legal principle . . . intended to emphasize the magistrate's role as an independent judicial officer and to encourage law enforcement officers to secure warrants. [*People v Franklin*, 500 Mich 92, 101; 894 NW2d 561 (2017) (quotation marks and citations omitted; alteration in original).]

"In Michigan, there is a presumption that an affidavit supporting a search warrant is valid." *People v Mullen*, 282 Mich App 14, 23; 762 NW2d 170 (2008). "[A]n affiant's representations in a search warrant affidavit that are based upon the affiant's experience can be considered along with all the other facts and circumstances presented to the examining magistrate in determining probable cause." *People v Darwich*, 226 Mich App 635, 639; 575 NW2d 44 (1997).

"There must, of course, be a nexus . . . between the item to be seized and criminal behavior. Thus . . . probable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction. In so doing, consideration of police purposes will be required." [*People v Hughes*, 506 Mich 512, 538-539; 958 NW2d 98 (2020), quoting *Warden, Maryland Penitentiary v Hayden*, 387 US 294, 307; 87 S Ct 1642; 18 L Ed 2d 782 (1967).]

Relying on *Illinois v Gates*, 462 US 213, 238; 103 S Ct 2317; 76 L Ed 2d 527 (1983), defendant argues the affidavit was "patently insufficient and failed to include sufficient facts from which to infer a fair probability that evidence of a crime could be found in [defendant's] Facebook account." Contrary to defendant's assertion, the affidavit provided probable cause to support the authorization of the search warrant. On the basis of Detective Sergeant Gormley's 24 years of experience in law enforcement, and his interview of defendant and watching the surveillance videos, it was not unreasonable for him to think that defendant's Facebook profiles could hold communications between defendant and the victim. Detective Sergeant Gormley opined that, "based on [his] training and experience," "any contact" between defendant and the victim would "help determine if premeditated intent was present" during the shooting, as according to Gormley, "individuals using Facebook frequently post or record their current state of mind." In the context of establishing probable cause, "[p]olice officers are presumptively reliable," *Ulman*, 244 Mich App at 509, and it was reasonable to conclude that a sufficient nexus existed between what occurred in the parking lot between two individuals and what could be on defendant's social media accounts, as it may show defendant's state of mind towards the victim, if any.

Defendant's reliance on *United States v Brown*, 828 F3d 375 (CA 6, 2016), is misplaced. In *Brown*, the Sixth Circuit concluded an "affidavit failed to establish the required nexus between the alleged drug trafficking and Brown's residence." *Id*. at 385. These facts are easily distinguishable from those presented here. Likewise, in *Brown* "the search warrant affidavit contained no evidence that Brown distributed narcotics from his home, that he used it to store narcotics, or that any suspicious activity had taken place there," *id*. at 382, while here defendant was indisputably involved in a shooting, was immediately arrested and identified by police, and the affidavit stated that it was probable that defendant might have used Facebook to communicate with the victim or make posts indicative of his state of mind on the day of the shooting.[4]

Regarding the particularity requirement, a search warrant "must state with particularity not only the items to be searched and seized, but also the alleged criminal activity justifying the warrant." *Hughes*, 506 Mich at 538. "That is, some context must be supplied by the affidavit and warrant that connects the particularized descriptions of the venue to be searched and the objects to be seized with the criminal behavior that is suspected, for even particularized descriptions will not always speak for themselves in evidencing criminality." *Id*. "Whether a search or a seizure is lawful depends on whether it is reasonable." *People v Mahdi*, 317 Mich App 446, 457; 894 NW2d 732 (2016). "[A] search for purposes of the Fourth Amendment occurs when the government intrudes on an individual's reasonable, or justifiable, expectation of privacy." *Id*. at 457-458

---

[4] *United States v Lyles*, 910 F3d 787 (CA 4, 2018) also does not control, for that case involved the search of a cell phone, which involves different privacy issues.

(quotation marks and citation omitted). "[S]earches conducted without both a warrant and probable cause to believe evidence of wrongdoing might be located at the place searched are unreasonable per se. . . . [W]hen evidence has been seized in violation of the constitutional prohibition against unreasonable searches and seizures, it must be excluded. . . ." *Id*. at 458 (quotation marks and citations omitted). "With regard to the search of the contents of a cell phone, . . . a warrant is generally required before searching the information contained in a cell phone." *Id*.

Defendant argues police reviewed 4,878 pages during the search of his Facebook profiles and the "wholesale search of thousands of pages of [defendant's] account" was too general and did not meet the particularity requirement. Defendant contended there was no evidence showing that defendant and the victim ever communicated, and the messages introduced at trial were unrelated. Defendant, relying on *Riley v California*, 573 US 373; 134 S Ct 2473; 189 L Ed 2d 430 (2014), contends police may not have unlimited access to his Facebook profiles, similar to how police "cannot search a phone present at a crime scene without limitation." Defendant's argument regarding particularity has some merit. Although police did not search defendant's cell phone, but rather his Facebook profiles, police were permitted unfettered access to the profiles. As defendant notes, there was no time limitation, and the search was not limited to only exchanges between defendant and the victim. The property to be seized included "[a]ny and all data or content, any and all deleted data or content, any and all deleted location data, including . . . Photographs, Videos, and Private Messages, contained in and/or associated with the following Facebook . . . profiles[.]" The identification numbers of the four profiles were provided. As stated, the search was for the purposes of locating "any recent contact" between defendant and the victim, or other posts showing defendant's or the victim's state of mind "in the recent past and/or the morning of [December 30, 2019]." Although this type of information could help police understand why the shooting occurred, their access to the Facebook profiles was broad, and did not include the particular information sought therein.

Regardless of whether the particularity requirement was met, defendant has not demonstrated any prejudice, as defendant is unable to show, even if the results of the search were excluded, the outcome of the case would have differed. Even if the jury had not seen the results of defendant's Facebook account – a photograph of the revolver, a photograph of ammunition, and three statements made by defendant to another Facebook user – the remaining evidence was more than sufficient to convict defendant beyond a reasonable doubt. The surveillance videos, the revolver recovered at the scene, and the bullets retrieved from the victim, provided ample evidence for the jury to convict defendant.

Defendant also contends that defense counsel provided ineffective assistance by failing to move to suppress the results of the Facebook search. Even if we assume that defense counsel's performance was deficient for not moving to suppress the evidence seized during the search of defendant's Facebook profiles, defendant has not demonstrated any prejudice regarding the admission of the evidence.

Affirmed.

/s/ Philip P. Mariani
/s/ Christopher M. Murray
/s/ Christopher M. Trebilcock