*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TAMARA LYNNE WHITE,

Defendant-Appellant.

UNPUBLISHED
February 13, 2026
11:45 AM

No. 372675
Genesee Circuit Court
LC No. 2019-045566-FC

Before: SWARTZLE, P.J., and MALDONADO and ACKERMAN, JJ.

PER CURIAM.

Defendant appeals as of right her jury convictions of four counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(h)(*i*), and one count each of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(h)(*i*), second-degree child abuse, MCL 750.136b(3), child sexually abusive activity (CSAA), MCL 750.145c(2), and possession of child sexually abusive material (CSAM), MCL 750.145c(4)(a). She was sentenced as a second-offense habitual offender, MCL 769.10, to 168 to 360 months' imprisonment for each CSC-I conviction, 106 to 360 months for CSAA, 88 to 300 months for CSC-II, 88 to 180 months for second-degree child abuse, and 21 to 72 months for CSAM.

On appeal, defendant contends that the trial court erred by denying her motion to suppress evidence and in its scoring of Offense Variable (OV) 19. Finding no errors, we affirm.

## I. BACKGROUND

Defendant is the biological mother of the victim, but her parental rights were terminated when he was an infant and he was adopted by his foster mother. The victim was diagnosed with pervasive developmental disorder—now known as autism spectrum disorder—at a young age. The adoptive mother allowed the victim to move in with defendant when he was 16 years old after he began exhibiting behavioral issues.

In November 2018, Children's Protective Services investigator Lacey Benjamin received a complaint from defendant's neighbors regarding inappropriate contact between defendant and the victim. Benjamin and Mount Morris Police Department Detective Kevin Mihailoff visited

defendant's apartment and interviewed the victim, who denied any sexual activity and refused a sexual assault examination at the hospital. The victim thereafter returned home with his adoptive mother.

A week later, Detective Mihailoff again visited defendant's apartment after the adoptive mother reported that the victim had run away from her home. The detective could hear a male voice and rustling inside the apartment when he knocked, but no one answered the door. Eventually, a maintenance worker let him into the apartment. Detective Mihailoff found defendant coming out of the bedroom and the victim in the bathroom. Defendant was then arrested for harboring a runaway, and she was later charged with the instant offenses.

The detective obtained a search warrant which authorized police to search defendant's apartment and seize "any electronic equipment capable of recording, accessing, storing, sending, or receiving electronic information and any photographic equipment; any bedding including sheets, blankets, pillowcases; air mattresses; any male clothing including undergarments; and any trace evidence including items that may contain DNA evidence; and any other evidence of Criminal Sexual Conduct." Pursuant to the warrant, officers seized and analyzed defendant's cell phone and a quilt. On the phone, officers discovered photographs depicting defendant nude, the victim nude, and the two nude together; they also located photographs depicting sexual acts and sexual text messages between the two. An analysis of the quilt revealed a semen stain that matched the victim's DNA profile, and other stains contained a mixture of defendant's and the victim's profiles.

At trial, the victim testified about repeated sexual contact between himself and defendant. The prosecution also presented testimony from Benjamin and Detective Mihailoff concerning their investigations, the evidence obtained from the cell phone, and testimony from lab analysts regarding the DNA evidence recovered from the quilt. Following the presentation of evidence, the jury convicted defendant and she was sentenced as described above. She now appeals.

## II. DISCUSSION

## A. MOTION TO SUPPRESS

Before trial, defendant moved to suppress the evidence obtained from the search warrant, alleging that the supporting affidavit contained numerous false statements without which there was not probable cause to issue the warrant. The trial court conducted a *Franks*[1] hearing and initially granted the motion, but after the prosecution sought reconsideration, the court set aside the order suppressing the evidence. Defendant now challenges that decision.

"We review de novo a trial court's ultimate decision on a motion to suppress on the basis of an alleged constitutional violation" and review for clear error any underlying factual findings made during the suppression hearing. *People v Mahdi*, 317 Mich App 446, 457; 894 NW2d 732 (2016) (quotation marks and citation omitted). "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a

---

[1] *Franks v Delaware*, 438 US 154; 98 S Ct 2674; 57 L Ed 2d 667 (1978).

mistake has been made." *Id*. (quotation marks and citation omitted). "We review de novo the issue whether the Fourth Amendment was violated and the issue whether an exclusionary rule applies." *Id*.

Further, "[a] reviewing court must give great deference to a magistrate's finding of probable cause to issue a search warrant." *People v Mullen*, 282 Mich App 14, 21; 762 NW2d 170 (2008). "Accordingly, we do not review de novo the lower court's determination regarding the sufficiency of a search warrant affidavit. Rather, this Court need only ask whether a reasonably cautious person could have concluded that there was a substantial basis for the finding of probable cause." *Id*. (quotation marks and citation omitted). "To find a substantial basis, we must ensure that there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id*. at 22 (quotation marks and citation omitted).

"Both the United States Constitution and the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures." *People v Pagano*, 507 Mich 26, 31-32; 967 NW2d 590 (2021); see also US Const, Am VI; Const 1963, art 1, § 11. "[R]easonableness is always the touchstone of Fourth Amendment analysis . . . and the general rule is that officers must obtain a warrant for a search to be reasonable under the Fourth Amendment." *People v Hughes*, 506 Mich 512, 524-525; 958 NW2d 98 (2020).

"A magistrate may issue a search warrant only when it is supported by probable cause." *People v Ulman*, 244 Mich App 500, 509; 625 NW2d 429 (2001). "Probable cause sufficient to support issuing a search warrant exists when all the facts and circumstances would lead a reasonable person to believe that the evidence of a crime or the contraband sought is in the place requested to be searched." *Id*. (citation omitted). A probable-cause determination "must be based on facts presented to the issuing magistrate by oath or affirmation." *People v Waclawski*, 286 Mich App 634, 698; 780 NW2d 321 (2009). "When probable cause is averred in an affidavit, the affidavit must contain facts within the knowledge of the affiant rather than mere conclusions or beliefs." *Id*. "The affiant may not draw his or her own inferences, but must state the matters that justify the drawing of inferences." *Id*.

Unnamed informants may supply information in a search warrant affidavit if it contains "affirmative allegations from which the judge or district magistrate may conclude that the person spoke with personal knowledge of the information and either that the unnamed person is credible or that the information is reliable." MCL 780.653(b). "An independent police investigation that verifies information provided by an informant can also support issuance of a search warrant." *Ulman*, 244 Mich App at 509-510. "[A]n affidavit relying on hearsay is not to be deemed insufficient on that score, so long as a substantial basis for crediting the hearsay is presented," but the informant's statements must be "reasonably corroborated by other matters within the officer's knowledge." *Illinois v Gates*, 462 US 213, 241-242; 103 S Ct 2317; 76 L Ed 2d 527 (1983) (quotation marks and citation omitted).

The defendant bears the burden of demonstrating, "by a preponderance of the evidence, that the affiant knowingly and intentionally, or with a reckless disregard for the truth, inserted false material into the affidavit and that the false material was necessary to the finding of probable cause." *Ulman*, 244 Mich App at 510. If "the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false

material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded . . . ." *Franks v Delaware*, 438 US 154, 156; 98 S Ct 2674; 57 L Ed 2d 667 (1978). But when "a law enforcement officer acts within the scope of, and in objective, good-faith reliance on, a search warrant obtained from a judge or magistrate," exclusion is not required. *People v Goldston*, 470 Mich 523, 530; 682 NW2d 479 (2004).

In this case, Detective Mihailoff averred in support of the search warrant:

1. That I am a Police Officer with 12+ years experience . . . and this search warrant affidavit is based upon my personal knowledge, upon the personal knowledge of fellow officers as directly related to me, or the persons whose statements are herein attributed to.

2. That on Nov. 21, 2018, your affiant received a complaint of Criminal Sexual Conduct from the Department of Health and Human Services ("DHHS") regarding [the victim] . . . . DHHS received information that [the victim] was possibly involved in a sexual relationship with his biological mother, [defendant] . . . .

* * *

8. That neighbors of [defendant], who reside in the same apartment building and adjoin the apartment of [defendant] have been complaining of noises that are sexual in nature, including moaning and the rocking of a bed, at times when [the victim] is present at [defendant's] apartment and there are no other people known to be in the apartment. [Defendant] is single and lives alone, with the exception of when [the victim] stays at the apartment. Neither [defendant] nor [the victim] are known to have significant others. Neighbors report that the only male who has been seen at [defendant's] residence is [the victim.]

9. When asked if he was being touched inappropriately by his mother, [the victim] became emotional and stated, "I don't wanna say," "I don't want to disclose that. I know how this system works."

10. [The adoptive mother] stated to DHHS that [the victim] had told her that [defendant] instructed him to "wash up" and that there would be "no evidence of anything since he washed up."

11. DHHS requested that [the victim] have a CSC kit done and [the victim] was transported to Hurley Hospital by [the adoptive mother]. Once at the hospital, [the adoptive mother] refused to give consent for the CSC kit to be done, and therefore the hospital refused to do the examination.

* * *

13. On or about Nov. 23, 2018, [the adoptive mother] reported [the victim] as a runaway . . . . Affiant suspected that [the victim] would be located at the

apartment of [defendant]. Affiant responded to that location and heard noises in the apartment, including the voice of a teenage male. Affiant knocked and announced himself with no response, doing so for approximately 5 minutes . . . . Affiant entered the apartment and again announced himself. Affiant located [defendant] in the master bedroom of the apartment, in the bed, with the lights off. The door to the adjoining master bathroom was closed. When Affiant asked [defendant] where [the victim] was, she indicated that he was in the bathtub. [The victim] was located nude in the bathtub of the master bedroom . . . .

At the *Franks* hearing, Detective Mihailoff testified that the affidavit was drafted by someone in the prosecutor's office and he did not review it in its entirety before signing it. He asserted that he received the information concerning the neighbors' complaints from CPS, and he did not speak to the neighbors before signing the affidavit. He clarified that he did not see the victim nude in the bathtub nor defendant in bed on November 23 as alleged in the affidavit; rather, he saw defendant exiting the bedroom and asked her where the victim was, and she replied that he was in the bathroom getting dressed. And he corrected the affidavit's assertion that the adoptive mother refused to consent to a sexual assault examination, clarifying that it was the victim who refused the examination.

The trial court initially granted the motion to suppress, concluding that law enforcement failed to corroborate the claims that neighbors heard sexual sounds coming from defendant's apartment, and those uncorroborated statements could not support a finding of probable cause. The prosecution then moved for reconsideration, asserting that the facts in the affidavit established probable cause for the warrant even without the uncorroborated assertions. The trial court ultimately agreed with the prosecution and set aside the order to suppress the evidence.

Defendant first contests the portions of the affidavit that were based on information provided to law enforcement by an unnamed DHHS worker, asserting that the unnamed worker is essentially an anonymous informant whose statements must be corroborated in order to support a probable-cause finding. That argument is unpersuasive. Uncorroborated statements of unnamed informants may support a finding of probable cause when there is sufficient information from which the magistrate could find the informant credible or the information reliable. MCL 780.653(b). DHHS workers receive reports of suspected abuse in the course of their employment, supporting a finding that the statements attributed to the unnamed worker were credible. See *People v Kalchik*, 160 Mich App 40, 52; 407 NW2d 627 (1987).

Moreover, though the credibility of the complaining neighbors is uncertain, further investigation by the officers corroborated the claims: when asked about inappropriate touching during the first police visit, the victim became emotional and said he did not want to disclose; the victim refused to consent to a sexual assault examination; and he told his adoptive mother that defendant instructed him to wash himself to remove evidence. It is true that defendant's instruction to the victim, relayed to DHHS by his adoptive mother, is hearsay, and Detective Mihailoff testified that he did not speak with the adoptive mother before signing the affidavit. But there is a substantial basis for crediting the hearsay: the victim is presumptively reliable as a crime victim, *People v Powell*, 201 Mich App 516, 521; 506 NW2d 894 (1993), and it was relayed to DHHS by his adoptive mother, who lived with him and was responsible for his care. Ultimately, it was

appropriate for the magistrate to consider the information provided by unnamed DHHS workers when determining whether probable cause supported the issuance of the warrant.

Defendant next asserts that the false statements in the affidavit render it insufficient to support a probable-cause finding. Again, we disagree.

At the *Franks* hearing, Detective Mihailoff identified three false statements in the affidavit: (1) that the adoptive mother refused the sexual assault examination; (2) that he found defendant in her bed when he entered the apartment on November 23; and (3) that he found the victim nude in the bathtub on that date. Accordingly, those statements must be severed from the rest of the affidavit. See *People v Melotik*, 221 Mich App 190, 200-201; 561 NW2d 453 (1997). Even reading the affidavit without those statements, however, it supports a finding of probable cause. The remaining assertions in the affidavit establish that defendant's neighbors had complained of sexual noises during times when only defendant and the victim were in her apartment, the victim became emotional and stated he did not want to disclose whether defendant touched him inappropriately when police inquired, defendant instructed the victim to wash up to remove any potential evidence, and the sexual assault examination was refused—irrespective of who refused it. Those facts support the magistrate's probable-cause finding, and the trial court did not err by setting aside the order granting the motion to suppress.

## B. OV 19

Defendant next challenges the trial court's assessment of 10 points for OV 19. We review the factual basis for a trial court's assessment of offense variables for clear error and review de novo "whether the trial court properly interpreted and applied the sentencing guidelines to the findings." *People v Teike*, 348 Mich App 520, 525; 19 NW3d 733 (2023) (citation omitted). "Clear error exists when this Court is left with a definite and firm conviction that a mistake was made." *Id*. at 526 (quotation marks and citation omitted). The trial court's factual findings "must be supported by a preponderance of the evidence." *Id*. (citation omitted).

Because due process requires that a defendant be sentenced only on the basis of accurate information, "a sentence is invalid if it is based on inaccurate information." *People v Miles*, 454 Mich 90, 96; 559 NW2d 299 (1997). OV 19 addresses interference with the administration of justice or emergency services. A trial court appropriately assesses 10 points for OV 19 when a defendant "interfered with or attempted to interfere with the administration of justice." MCL 777.49(c). "[T]he plain and ordinary meaning of 'interference with the administration of justice' for purposes of OV 19 is to oppose so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process." *People v Hershey*, 303 Mich App 330, 343; 844 NW2d 127 (2013). Hiding from the police can constitute interference with the administration of justice if it is done for the purpose of hindering or hampering a police investigation. *People v Smith*, 318 Mich App 281, 286; 897 NW2d 743 (2016).

In this case, the trial court assessed 10 points for OV 19 based on the evidence that defendant heard the police knocking on her door on November 23 but did not open the door or otherwise respond. The record supports that assessment. Detective Mihailoff testified that he knocked for approximately five minutes and could hear voices and rustling inside the apartment. The victim testified at trial that just before the police entered the apartment, defendant instructed

-6-

him to get in the bath, and she shut the bathroom door. While he was in the bathroom, defendant told him, "[T]he police are here, hurry up." That evidence supports a finding that defendant attempted to interfere with the administration of justice by hiding from the police and hindering their efforts to collect evidence of sexual assault.

Affirmed.

/s/ Brock A. Swartzle
/s/ Allie Greenleaf Maldonado
/s/ Matthew S. Ackerman